Kerry M.L. Smith, OSB No. 881033
SMITH & FJELSTAD
722 N. Main Avenue
Gresham, Oregon 97030
Tel: (503) 669-2242
Fax: (503) 669-2249
E-mail: smithandfjelstad@frontier.com

Attorneys for Plaintiff Robin Dean


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| ROBIN DEAN,<br><br>                    Plaintiff,<br><br>     v.<br><br>SAFEWAY, INC.,<br><br>                    Defendant. | Civ. No.  3:12-CV-01875-PK<br><br>PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED |

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    Defendant Is Not Entitled to Summary Judgment on
              The FMLA/OFLA Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              1.    Mr. Dean properly notified defendant of his
                    need for protected leave. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              2.    Mr. Dean was not *required* to accept a light duty
                    assignment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                    a.    FMLA authorized Mr. Dean to reject the light duty offer. . . . . 13

                    b.    Under OFLA Mr. Dean was free to reject the light duty offer. . . 14

              3.    Mr. Dean was not required to contact human resources
                    for FMLA/OFLA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

              4.    Section 7.5 of the CBA did not apply to Mr. Dean. . . . . . . . . . . . . . 15

              5.    There is a connection between Mr. Dean's termination and defendant's
                    actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.    Defendant Is Not Entitled to Summary Judgment on
              The Disability Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              1.    Mr. Dean's disability discrimination claim survives summary judgment. 17

              2.    Mr. Dean's failure to accommodate claim survives summary judgment. 19

                    a.    Mr. Dean could perform the essential functions of
                          the position he held immediately prior to his termination. . . . . 20

                    b.    Mr. Dean requested accommodation to perform his assigned job
                          duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

                    c.    Defendant failed to accommodate Mr. Dean. . . . . . . . . . . . . . . 22

              3.    Defendant did not move for summary judgment on Mr. Dean's
                    failure to engage in the interactive process claim. . . . . . . . . . . . . . . 25

        D.    The Workers' Compensation Discrimination Claim Survives
              Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

E.    The Failure to Reinstate An Injured Worker Claim Survives
      Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      1.    Mr. Dean was timely released to return to his truck
            driving position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      2.    Mr. Dean was not required to demand reinstatement. . . . . . . . . . . . . . 32

F.    Mr. Dean Concedes His ORS 659A.046 Claim. . . . . . . . . . . . . . . . . . . . . 33

G.    Defendant is Not Entitled to Summary Judgment on
      The Wrongful Discharge Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**SMITH & FJELSTAD**
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

# I.    INTRODUCTION

On March 16, 2011, Mr. Dean's doctor removed him from work as a truck driver for defendant because Mr. Dean had suffered an on-the-job injury.  Upon Mr. Dean's report of the injury and his workers' compensation claim, defendant assigned Mr. Dean to work in the Health and Safety Room.  Mr. Dean, as was his right under both FMLA and OFLA, declined light duty employment.  Defendant, nevertheless, inexplicably failed and refused to place Mr. Dean on mandatory and protected FMLA/OFLA leave of absence.  Nine days later, defendant terminated Mr. Dean's employment because he allegedly failed to follow the call-in policies for the light duty program–the precise program in which he lawfully declined to participate.  Defendant then oddly argues that Mr. Dean, through a clearly lawful assertion of his statutory rights, voluntarily quit his job and that defendant, who clearly violated FMLA/OFLA, is not at all responsible for Mr. Dean's separation from employment.  When the law and facts are properly analyzed, summary judgment is inappropriate on all of Mr. Dean's claims except his ORS 659A.046 failure to reinstate claim.

# II.    FACTS[1]

Mr. Dean worked for defendant as a truck driver for approximately 18.5 years prior to his involuntary termination on March 25, 2011.  Brown Dec. p. 112, 114.  Mr. Dean agrees that he was a member of the union but denies that he voluntarily quit his job with defendant.  Dean Dec. ¶2.  Rather, as demonstrated below in his Argument, Mr. Dean was improperly denied his FMLA/OFLA rights and improperly denied the opportunity a take a leave of absence following his on-the-job injury.  As a result of defendant's improper action, defendant, on March 25, 2011, mailed Mr. Dean a letter improperly accusing Mr. Dean of voluntarily resigning his employment.  Brown Dec. p. 112.

Mr. Dean does not dispute the language contained in Section 7.5 of the CBA.  As demonstrated below in his argument, however, Mr. Dean denies he was participating in

---

[1]Mr. Dean responds to defendant's Statement of Undisputed Facts in the order defendant recites the "undisputed" facts.  Mr. Dean also supplies additional facts, as necessary.

Sᴍɪᴛʜ & Fᴊᴇʟsᴛᴀᴅ
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

defendant's light duty work program at the time of his termination. In reality, Mr. Dean was exercising his right to take FMLA/OFLA leave and was entitled to a leave of absence under defendant's policy. Smith Dec. Ex. A. An employee on a leave of absence *is not* subject to Section 7.5 of the CBA. Brown Dec. p. 73 ("An employee temporarily absent from work for any reason other than vacation, *approved leave of absence*, or hospitalization when an employee is unable to communicate, must personally report his status by telephone to his supervisor.") (Emphasis added). During the period at issue in this litigation, defendant did not advise Mr. Dean of his FMLA/OFLA rights and did not offer him FMLA/OFLA leave. Dean Dec. ¶3.

Contrary to defendant's implication, Mr. Dean specifically denied knowing of the call in policy contained in the CBA.[2] Dean Dep. 108:20-109:7.

Mr. Dean agrees that he suffered an on-the-job injury to his knee on or about February 17, 2011. Following his injury, Mr. Dean immediately reported the injury to Mr. Chris Rooney and Mr. Rooney had him complete a drug test and an accident report. Dean Dep. 77:1-79:6. Defendant's representation that Mr. Dean "did not elect to file a workers' compensation claim at that time because he preferred to seek treatment with his own physician at Kaiser" (Def. Mem. p. 6) is simply false and unsupported by the deposition testimony referenced. Mr. Dean did not ask to be taken off work because he "thought [he] could man through it or something." Dean Dep. 79:9-17. Mr. Dean specifically testified that he did not seek medical treatment between February 17 and March 16, 2011. Dean Dep. 80:2-6.

---

[2]Defendant's reference to the Acknowledgment of Safeway Inc. Injured Worker Notification Policy (Brown Dec. p. 64) is confusing. This document is dated August 25, 2004, and *does not* have the alleged Injured Worker Notification Policy attached. The union contract at issue (Brown Dec. pp. 66-111) became effective April 18, 2010. Brown Dec. p. 66. There is no evidence that the Injured Worker Notification Policy in August 25, 2004 (the one Mr. Dean received) is the same policy as referenced in the April 18, 2010, union contract. Similarly, there is no evidence that Section 7.5 of the April 18, 2010, CBA is the same as the policy that was attached to the August 25, 2004, document. There is no evidence that Mr. Dean received the Injured Worker Notification Policy identified in the CBA–at least there is no evidence he signed for such a policy. Defendant's "proof" does not support the alleged facts.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

On March 16, 2011, Mr. Dean sought medical treatment with Kaiser because his knee was swelling, it hurt bad, it was locking up and he could not walk. Dean Dep. 80:7-14. Following his examination, Mr. Dean took his medical note directly to Safeway and informed the dispatcher that he would be off two to three weeks. Dean Dep. 70:3-71:7; 73:7-10. Mr. Dean agrees that Exhibit A to Ms. Thomsen's declaration is the workers' compensation claim form. Mr. Dean provided defendant with the note attached to his declaration as Exhibit A.

Mr. Dean agrees, for purposes of this motion only, that he completed and signed an 801 on March 16, 2011, and that he spoke with Mr. Rooney. On March 16, 2011, Mr. Dean spoke with Mr. Eric Maiorano, an employee of Proof Positive employed at the Safeway Distribution premises where he manages the Health and Safety Room for Safeway. Maiorano Dep. 6:5-18; 8:1-7; Smith Dec. Ex. B. Mr. Maiorano instructed Mr. Dean to report to the Health and Safety Room on March 17, 2011. Smith Dec. Ex. B.

Mr. Dean agrees that he arrived for work at the Health and Safety Room on March 17, 2011 and received a packet of information from Mr. Maiorano. The information contained several incomplete forms including a letter with attachments which Mr. Dean was to take to his treating physician for approval of his assignment to the Health and Safety Room. Smith Dec. Ex. C, Dep. Ex. 11. The information also contained an *uncompleted* Job Offer Letter indicating that Mr. Dean's doctor had "agreed that the following job appears to be within your capabilities, and the commute is within your physical capabilities." Smith Dec. Ex. D, Dep. Ex. 12.

On March 17, 2011, Mr. Dean agrees that, after reading some of the information contained in the packet of information, he left the Health and Safety Room to speak with his supervisor, Mr. Chris Rooney. Mr. Dean also agrees that he was unable to locate Mr. Rooney and instead spoke with another supervisor, Ms. Erin Skerjanec. Mr. Dean denies, however, that he informed Ms. Skerjanec that "he was going home sick." Indeed, the representation that Mr. Dean testified that he told Ms. Skerjanec he was going home sick is a fabrication and contrary to Mr. Dean's actual testimony. Rather than Mr. Dean asking for a sick day, Ms. Skerjanec told Mr. Dean "you look horrible" to which Mr. Dean responded "well, I feel terrible." In response to Mr.

Dean's statement, Ms. Skerjanec *instructed* Mr. Dean to go home. Mr. Dean specifically testified "I went home because she told me to. There was no sick leave or nothing." Dean Dep. 85:6-21. Later, Mr. Dean confirmed that "Erin told me to go home because I looked bad." Dean Dep. 100:16-18.[3]

After speaking with Ms. Skerjanec, Mr. Dean returned to the Health and Safety Room and spoke with Mr. Maiorano. Smith Dec. Ex. B. According to Mr. Maiorano, Mr. Dean specifically stated that "he does not want to participate in the H&R program." Mr. Maiorano claims to have informed Mr. Dean of the consequences of not starting work in the Heath and Safety Room and Mr. Maiorano understood those consequences to include written reprimand, suspension or termination. Smith Dec. Ex . B; Maiorano Dep. 93:15-94:25. Mr. Dean again informed Mr. Maiorano that he did "not need the money" and that he would "rather just stay home and take care of it" himself. Smith Dec. Ex. B; Maiorano Dep. 95:9-24. On March 18, 2011, Mr. Dean called in sick to the Health and Safety Room. Smith Dec. Ex. B.

Mr. Dean agrees that he did not telephone his supervisor on March 21, 22, 23 or 24, 2011. He does not agree (as demonstrated below) that this violated Section 7.5 of the CBA. Specifically, as detailed below, the failure to call did not violate Section 7.5 because Mr. Dean had lawfully elected not to participate in the available light duty program and defendant unlawfully failed to place him on FMLA/OFLA leave.

On March 23, 2011, Mr. Dean's doctor approved Mr. Dean's assignment to the Health and Safety Room. Smith Dec. Ex. E. Mr. Dean was never notified of this approval. Dean Dec. ¶5. On March 25, 2011, Mr. Brown sent Mr. Dean a letter which informed Mr. Dean that Safeway considered Mr. Dean to have voluntarily resigned his position with the company.

Mr. Dean agrees that he filed a grievance, that the Joint Conference Board considered his grievance and that his grievance was denied. Mr. Dean also agrees that the only issues the Joint

---

[3]Defendant's representation that Mr. Dean requested to go home sick when the reality is (even based on the testimony defendant references) Ms. Skerjanec instructed him to go home is extremely misleading and discouraging.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Conference Board considered was whether Mr. Dean was able to communicate the reason for his absence and whether he actually did so. CBA Section 7.5. Under the CBA, the Joint Conference Board could not consider whether defendant violated FMLA/OFLA and/or whether defendant engaged in the conduct alleged in the Complaint. CBA Section 7.5.

Mr. Dean agrees that he filed a complaint with BOLI and that BOLI dismissed his complaint. That BOLI dismissed the complaint, however, is not admissible evidence in this matter and is not relevant to the issues before this court.

Mr. Dean agrees that he did not return to work for Safeway following March 25, 2011. Defendant's representation that Mr. Dean never requested accommodation, however, is a disappointing fabrication. As noted in Section III.C.2.b, below, Mr. Dean repeatedly requested accommodation.

Mr. Dean agrees that he did not specifically request FMLA/OFLA leave and that he did not specifically ask the human resources department for leave or accommodation. His failure to specifically do so, however, is of no legal consequence.

Defendant's representation that Mr. Dean admits to being repeatedly advised to call his supervisor if he was not going to participate in the Health and Safety Room is another fabrication. On March 16, 2011, when Mr. Dean delivered his restrictions to the dispatcher, the dispatcher informed him to contact his supervisor, Mr. Rooney, the following morning. The following morning, Mr. Rooney telephoned Mr. Dean and Mr. Dean returned the call. At that point, Mr. Rooney informed Mr. Dean to report to the Health and Safety room and Mr. Dean complied. Dean Dep. 81:7-82:10. This clearly is not an instruction to telephone his supervisor (or a failure to do so) if he was going to miss light duty work in the Health and Safety Room.

Similarly, defendant's counsel asked Mr. Dean "Do you remember Eric telling you that it was important for you to call your supervisor if you were not going to be coming to the health and safety room?" Mr. Dean responded with: "I walked down and talked to Chris, yes." Dean Dep. 98:15-25. Mr. Dean clearly did not admit to receiving the instruction which defendant now wishes had been given to Mr. Dean.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Defendant also represents that Mr. Dean "had read the Collective Bargaining Agreement which defined his relationship with Safeway." Def. Mem. p. 9. In reality, Mr. Dean testified that, at some point during his 18.5 years of employment with Safeway he had been given a copy of the union contract. Dean Dep. 22:16-19. This is not an acknowledgment that he read the contract or that he even received the contract at issue in this case–the one that became effective on April 18, 2010. To the extent a union representative explained the call in requirements to Mr. Dean, Mr. Dean clearly testified that this occurred *after* he was terminated. Dean Dep. 47:21-49:7. Contrary to defendant's representation, there is no evidence that Mr. Dean read, or had the opportunity to read, the applicable union contract prior to his termination. The reason for defendant's obvious misrepresentation of Mr. Dean's deposition testimony is unclear, yet such a significant misrepresentation (along with other noted misrepresentations) is concerning.

Finally, Mr. Dean acknowledges that, over objection, Mr. Dean testified that he did not know if he was discriminated against and that he did not know how to answer whether he had been retaliated against. Dean Dep. 123:10-24. Of course, Mr. Dean is not a lawyer and is not charged with knowing what constitutes discrimination or retaliation. Most likely that is the reason that Mr. Dean, or other terminated employees, would contact an attorney. Mr. Dean did testify, however, that he felt he was wrongfully terminated. Dean Dep. 122:20-123:7. Mr. Dean's lack of knowledge as to the meaning of the terms "discrimination" and "retaliation" are not determinative of Mr. Dean's claims.

## III.   ARGUMENT

### A.   Summary Judgment Standard.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Summary judgment is not appropriate if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court considering the motion may not weigh the evidence or determine the truth and must construe the evidence in the

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).

A fact is material if the substantive law governing the issue so dictates. *T.W. Elec. Serv. v. Pacific Elec. Contr. Ass'n*, 809 F.2d 626 (9th Cir. 1987). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). "Courts require very little evidence from a plaintiff to survive summary judgment in an employment discrimination case because the ultimate question is one that is most appropriately conducted by the fact-finder upon a full record." *Arigbon v. Multnomah County*, 2010 U.S. Dist. LEXIS 50187, *21 (D. Or. 2010) *citing, Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000). The party seeking summary judgment bears the burden of informing the court of the basis for the motion and initially identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

**B.      Defendant Is Not Entitled to Summary Judgment on the FMLA/OFLA Claims.[4]**

Defendant's argument that Mr. Dean cannot prevail at trial on his family leave claims is based on misstatements of fact and a misunderstanding of the law.[5] Defendant incorrectly contends that Mr. Dean cannot prevail on his family leave claims for the following reasons: (1) "[H]e never notified Safeway of his intention to take leave under either the federal or state laws"; (2) Safeway received nothing from Mr. Dean indicating he needed to take a full leave of absence; and (3) [closely related to (1)] "Dean admits he never talked with anyone at Safeway Human Resources about taking a leave of absence." Def. Mem. P. 17. The reality is that (1) Mr. Dean

---

[4]Third and Fourth Claims for Relief. Complaint, ¶¶37-44. Mr. Dean begins with his FMLA/OFLA claims because FMLA/OFLA absolutely prohibited defendant from requiring Mr. Dean to accept a light duty assignment. Defendant's mistaken belief that Mr. Dean was obligated to accept a light duty assignment after reporting a workers' compensation claim is significant in defeating each of defendant's arguments.

[5]Defendant does not deny that Mr. Dean was an eligible employee or that Safeway is an employer under FMLA/OFLA. Thus, Mr. Dean will not address these elements of his claim.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

did all that was required of him (legally and factually) to notify defendant of his need for protected FMLA/OFLA leave; (2) FMLA/OFLA do not *require* Mr. Dean to accept a light duty position (indeed, both specifically allow him to *reject* the light duty assignment and utilize FMLA/OFLA leave); and (3) Mr. Dean was not required to specifically notify Safeway Human Resources of his need for FMLA/OFLA leave. When the facts are correctly understood and the law correctly analyzed, it becomes evident that Mr. Dean may (and likely will) prevail on the FMLA/OFLA claims at trial and, therefore, summary judgment is not appropriate.[6]

1. **Mr. Dean properly notified defendant of his need for protected leave.**

Defendant acknowledges that Mr. Dean was not required to specifically express a need for protected leave and that he only need provide defendant with information sufficient for defendant to "reasonably determine whether FMLA may apply to the leave request." Def. Mem. P. 18; 29 C.F.R. §825.303(b) ("the employee need not expressly assert rights under the FMLA or even mention the FMLA."); *Bachelder v. America West Airlines*, 259 F.3d 1112, 1130 (9th Cir. 2001). The employer's duties are triggered when the employee provides sufficient information to put the employer on notice that the employee may need protected leave. *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000). Once the employee provides this information, "it is the employer's responsibility to determine when [protected leave] is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003). "It is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by [protected leave] . . . [e]mployees need only notify their employers that they will be absent under circumstances that indicate [protected leave] might apply." *Bachelder*, 259 F.3d at 1130. In short, the employer, after receiving notice, is responsible for being aware that the absence might

---

[6]Mr. Dean agrees that the FMLA and OFLA claims are subject to a similar analysis. ORS 659A.186(2); *Nelson v. Unified Grocers, Inc.*, 2011 U.S. Dist. Lexis 151483 at *46, n. 12 (D. Or. 2011); *Arigbon*, 2010 U.S. Dist. Lexis 50187 at *58-59.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

qualify [for protected leave]." *Id*. An employer's good faith or lack of knowledge is not a defense to liability. *Id.* at 1130.

The notice, depending on the circumstances, may include such information as that a medical condition renders the employee unable to perform the functions of the job, that the employee is under the continuing care of a health care provider, and the anticipated duration of the absence. 29 C.F.R. §825.303(b). In this case, Mr. Dean provided defendant with a very specific note. That note informed defendant of a very specific medical condition ("SPRAIN OR STRAIN OF KNEE right"), that Mr. Dean could not perform the functions of his job ("No vehicle operation for work"), that Mr. Dean was under continuing care ("Please return to the Occupation Health Clinic in 1 week(s)"). Dean Dec. Ex. A. The documents Mr. Dean's doctor provided to defendant on March 23, 2011, provided similar, and more detailed, information. Smith Dec. Ex. E. Thus, a fact finder could conclude that Mr. Dean provided defendant with all of the notice required under FMLA/OFLA.[7]

### 2.  Mr. Dean was not *required* to accept a light duty assignment.

The fatal flaw throughout defendant's argument is that Mr. Dean was not entitled to protected FMLA/OFLA leave. Defendant argues that Mr. Dean was not entitled to FMLA/OFLA leave because he "never requested any form of leave or notified Safeway at to *why he needed to take a leave of absence instead of working in the light duty position that was offered to him*." Def. Mem. P. 18 (emphasis added).[8] This one clause lays bare defendant's misconceived argument that FMLA, OFLA or both *required* Mr. Dean to accept the light duty position. In reality, both FMLA and OFLA allowed Mr. Dean to reject defendant's offer of light duty employment and utilize protected family leave. Defendant is not entitled to summary judgment.

---

[7]Significantly, defendant *did not* request medical certification from Mr. Dean under 29 C.F.R. §825.305 and *did not* notify Mr. Dean of his rights under 29 C.F.R. §825.300. Indeed, defendant completely failed to inform Mr. Dean that his notification of need for leave was inadequate or that defendant was denying his request for protected leave.

[8]Defendant does not (most likely because it cannot) identify *any* legal support for the contention that FMLA/OFLA *required* Mr. Dean to accept the light duty position.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

### a. FMLA authorized Mr. Dean to reject the light duty offer.

FMLA guarantees qualifying employees twelve weeks of unpaid medical leave each year. 29 U.S.C. §2612(a)(1). While on leave, the employee may receive wage compensation through either the use of sick or vacation leave or through a workers' compensation program. *Repa v. Roadway Express, Inc.*, 477 F.3d 938, 941 (7th Cir. 2007). While FMLA allows an employer to require an employee to utilize sick or vacation leave concurrently with his FMLA leave, the employer may not do so if the employee is receiving pay through workers' compensation. *Id*. A workers' compensation absence and a FMLA absence may run concurrently. 29 C.F.R. §825.702(d)(2). If a doctor authorizes light duty while the workers' compensation absence and the FMLA absence are running concurrently and the employer has a light duty program "[i]f the employer offers such a position the employee is *permitted* but **not required** to accept the position." 29 C.F.R. §702(d)(2) (emphasis added). When an employee is entitled to FMLA leave, "an employer may not, in lieu of FMLA entitlement, require an employee to take a job with a reasonable accommodation." 29 C.F.R. §825.702(d)(1).[9] "There is no such thing as 'FMLA light duty' whether pursuant to the statutes or their corresponding regulations. To the extent that 'light duty' is mentioned in the regulations, it is a component of a workers' compensation system." *Hendricks v. Compass Group, USA, Inc.*, 496 F.3d 803, 805 (7th Cir. 2007); *see, also, James v. Hyatt Regency Chicago*, 707 F.3d 775 (7th Cir. 2013). An employee has the option to accept light duty under workers' compensation or continue with FMLA leave. 29 C.F.R. §§825.220(d), 825.702(d).

In this case, Mr. Dean was eligible for FMLA due to a workers' compensation injury. Thus, under FMLA, Mr. Dean was allowed to accept defendant's offer of light duty employment, but he was not *required* to accept that offer. Defendant admits that Mr. Dean rejected the offer of light duty employment. Smith Dec. Ex. B. Defendant denied Mr. Dean's FMLA rights.

---

[9]Similarly, an employer may not change the essential functions of a job to preclude the taking of protected leave. 29 C.F.R. §825.220(b)(2).

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

While Mr. Dean is not required to anticipate defendant's arguments, defendant may argue that Mr. Dean, through his union, waived the right to elect continued FMLA leave over a light duty assignment. Under the FMLA, however, "employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA. For example, employees (*or their collective bargaining representatives*) cannot 'trade off' the right to take FMLA leave. . ." 29 C.F.R. §825.220(d) (emphasis added). While an employee may voluntarily accept (not as a condition of continued employment) a light duty position while on workers' compensation leave, the employee is not required to do so. *Id*. Thus, defendant may not argue that the Collective Bargaining Agreement required Mr. Dean to accept the offered light duty assignment.

   **b.    Under OFLA Mr. Dean was free to reject the light duty offer.**

OFLA allows an employer to "transfer an employee recovering from a serious health condition to an alternate position that accommodates the serous health condition provided: (a) The employee accepts the position *voluntarily and without coercion . . .*" OAR839-009-0245(5)(a) (emphasis added). In this case, Mr. Dean did not *voluntarily* accept the light duty assignment. Defendant's representative has testified that Mr. Dean specifically *rejected* the light duty assignment. Mr. Dean was well within his rights to do so.

In addition to specifically allowing Mr. Dean to reject the light duty assignment, Oregon law specifically informed defendant how to respond to Mr. Dean's decision. An injured worker who rejects a bona fide offer of light duty or modified employment[10] and is otherwise entitled to family leave "automatically commences a period of family leave . . . upon refusing the offer of employment *and need not give additional written or oral notice to the employer that the employee is commencing a period of family leave*." ORS 659A.043(4)(a), (b) (emphasis added);

---

[10]Defendant has not raised an issue as to whether the light duty was a bona fide offer light duty. If defendant raises this issue in reply, Mr. Dean requests the opportunity to submit a written argument that the light duty offer in this case was not a bona fide offer of light duty as contemplated in the statute.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

*see, also,* OAR 839-009-0250(12).[11]  A fact finder could conclude that defendant's requirement that Mr. Dean accept the light duty assignment violated Mr. Dean's OFLA rights.

**3.      Mr. Dean was not required to contact human resources for FMLA/OFLA.**

Ms. Thomsen, in her declaration supporting defendant's motion, testifies that Mr. Dean provided defendant, on March 16, 2011, sufficient notice to inform defendant that FMLA/OFLA leave was in play.  Mr. Dean was not required to submit additional information (unless requested by defendant and there is no evidence that defendant requested additional information).  Mr. Dean's alleged failure to directly contact human resources regarding his need for leave does not support defendant's motion.

**4.      Section 7.5 of the CBA did not apply to Mr. Dean.**

Defendant contends that Mr. Dean was subject to Section 7.5 of the CBA because Mr. Dean was an "employee participating in the Employer's light duty work program as a result of industrial injury."  In reality, and as demonstrated above, Mr. Dean *was not* an employee participating in defendant's light duty work program.  Mr. Dean lawfully had specifically declined participation in the program.  Defendant cannot hold Mr. Dean to compliance with a rule which applies to employees who elect to participate in the light duty work program.

Section 7.5 applies only to those employees who are "absent from work for any reason *other than* vacation, *approved leave of absence*, or hospitalization when an employee is unable to communicate." (Emphasis added).  Mr. Dean properly informed defendant of his need for protected FMLA/OFLA leave.  Under defendant's policy, protected FMLA/OFLA leave is an approved leave of absence.  Smith Dec. Ex. G.  As defendant never denied Mr. Dean's request for FMLA/OFLA leave, Mr. Dean was on, or reasonably believed he was on, a protected leave of absence following March 16, 2011.  Thus, the call in requirements of Section 7.5 did not apply to

---

[11]This further dispenses of defendant's argument that Mr. Dean did not request FMLA/OFLA.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Mr. Dean and defendant may not terminate his employment for an alleged violation of that policy.[12]

Defendant completely failed to comply with the FMLA/OFLA notification requirements. Dean Dec. ¶5. Once Mr. Dean requested protected leave or defendant became aware that his leave was for a qualifying reason, defendant was required to notify him of his eligibility for leave within five business days. 29 C.F.R. §825.300(b). The eligibility notice was required, among other matters, to notify Mr. Dean of "specific expectations and obligations of the employee and explaining any consequences of a failure to meet those obligations." 29 C.F.R. §825.300(c). The failure to provide the required notice and/or designate leave as protected or unprotected violates FMLA/OFLA and subjects the employer to appropriate damages. 29 C.F.R. §825.300(e); 29 C.F.R. §825.301(e). In this case, defendant absolutely failed to provide required notice to Mr. Dean and absolutely failed to designate his leave as protected. Summary judgment on Mr. Dean's FMLA/OFLA claims is inappropriate.

**5.      There is a connection between Mr. Dean's termination and defendant's actions.**

Defendant argues there is no connection between Mr. Dean's use of protected leave and his termination because his separation from employment was a voluntary quit under Section 7.5. Def. Mem. P. 19-20. As demonstrated above, however, Mr. Dean was not subject to Section 7.5 because he was not "participating in the Employer's light duty work program as a result of industrial injury." Mr. Dean had specifically opted out, as was his right, of participation in this program. Mr. Dean was, however, entitled to a leave of absence under defendant's policy. Smith Dec. Ex. G. Under that policy, and under applicable law, Mr. Dean was entitled to a FMLA/OFLA leave of absence which exempted him from compliance with Section 7.5. Mr. Dean's termination was a direct result of defendant's failure to honor Mr. Dean's FMLA/OFLA

_____

[12]Defendant cannot keep Mr. Dean subject to Section 7.5 by improperly failing to place him on a leave of absence.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

rights. Thus, Mr. Dean's termination was a direct result of defendant's failure to comply with FMLA/OFLA and defendant is not entitled to summary judgment on the termination claim.

### C. Defendant Is Not Entitled to Summary Judgment on the Disability Claims.[13]

"No covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. §12112(a). An individual is a qualified individual with a disability if he can perform the essential functions of the particular position either with or without accommodation. 42 U.S.C. §11211(8). A qualified individual with a disability may bring various claims under the ADA including disparate treatment, disparate impact, failure to accommodate (*McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004)), failure to engage in the interactive process (*Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated on other grounds*, 535 U.S. 391 (2002); *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) and retaliation for asserting ADA rights (42 U.S.C. §12203(a)).

Mr. Dean alleges disparate treatment, failure to accommodate and failure to engage in the interactive process claims. Defendant moves for summary judgment on Mr. Dean's disparate treatment claim and his failure to accommodate claim. Defendant *does not* address Mr. Dean's failure to engage in the interactive process claim. On the present record defendant is not entitled to summary judgment on any of Mr. Dean's disability discrimination claims.

#### 1. Mr. Dean's disability discrimination claim survives summary judgment.[14]

A terminated former employee establishes a *prima facie* case of discrimination under the ADA by demonstrating that he was (1) disabled; (2) qualified to perform the essential functions of the job either with or without accommodation; and (3) discriminated against because of his

---

[13]Oregon's disability discrimination laws are construed, to the extent possible, in harmony with similar provisions of the ADA. ORS 659A.139. The same analysis, therefore, applies to Mr. Dean's ADA and Oregon disability discrimination claims. *Haddock v. Lucent Techs., Inc.*, 2008 WL 4133573, at *5 (D. Or. 2008).

[14]Complaint, ¶¶24, 27, 28.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

disability.  *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 989 (9th Cir. 2007) *citing, Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

In this case, at least with respect to Mr. Dean's disparate treatment claim, defendant does not dispute that Mr. Dean, at the time of his termination, was disabled.  Similarly, defendant does not contest that Mr. Dean could perform the essential functions of his job (either as truck driver or in the Health and Safety Room) either with or without accommodation.  Rather, with respect to the disparate treatment claim, defendant argues *solely* that Mr. Dean cannot prove his termination was causally connected to his disability because Mr. Dean, allegedly, voluntarily resigned his position with defendant.  Def. Mem. p.13.  Because defendant focuses solely on this causal connection, Mr. Dean will address only this issue and will not address whether he had a disability and/or wether he could have performed the essential functions of his assigned position either with or without accommodation.

Regarding the causal connection between Mr. Dean's disability and his termination from employment, defendant's sole argument is that Mr. Dean voluntarily resigned from his position because Mr. Dean did not report to the Health and Safety Room and did not comply with Section 7.5 of the CBA.  Defendant's argument fails, however, because defendant could not require Mr. Dean to work in the Health and Safety Room and, while he was on FMLA/OFLA leave, Section 7.5 did not apply to Mr. Dean.

As demonstrated, defendant could not lawfully require Mr. Dean to report to the Health and Safety Room to perform *any* job duties while he was off work due to his workers' compensation claim and entitled to FMLA/OFLA leave.  Defendant's effort to force Mr. Dean to report for light duty work in violation of FMLA/OFLA cannot support defendant's argument that Mr. Dean's failure to report for work or call in to the Health and Safety Room was a lawful reason to terminate Mr. Dean.  It is axiomatic that defendant cannot deny Mr. Dean his FMLA/OFLA rights, violate specific provisions of FMLA/OFLA and then utilize defendant's own (and primary) unlawful conduct to terminate Mr. Dean and violate the ADA.  Defendant is not entitled to summary judgment on this claim.

Sᴍɪᴛʜ & Fᴊᴇʟsᴛᴀᴅ
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Defendant also cannot argue that, regardless of the unlawfulness of a mandatory assignment to the Health and Safety Room, Mr. Dean was nevertheless subject to the call in requirements of Section 7.5. Defendant had more than adequate notice of Mr. Dean's eligibility for FMLA/OFLA leave. Defendant was legally (and by policy) obligated to place Mr. Dean on the protected leave of absence under FMLA/OFLA. Employees on a leave of absence are specifically *exempted* from the call in requirements of Section 7.5. Defendant may not intentionally ignore its FMLA/OFLA obligations, violate FMLA/OFLA and place Mr. Dean in a position where he was unlawfully and improperly subject to Section 7.5. Yet, based on the facts and the applicable law, a jury could conclude that this is precisely the path defendant intentionally pursued in an effort to keep Mr. Dean (and, most likely, many like him), subject to Section 7.5. A jury could, therefore, conclude that there was a causal connection between Mr. Dean's disability and his unlawful termination. Summary judgment is not appropriate.

## 2. Mr. Dean's failure to accommodate claim survives summary judgment.[15]

Defendant offers several arguments that Mr. Dean cannot prevail on his failure to accommodate claim. First, defendant contends that Mr. Dean could not perform the essential functions of his truck driving job as of March 25, 2011. Second, defendant incorrectly contends that Mr. Dean was obligated to specifically request accommodation and falsely contends that Mr. Dean did not request accommodation. Third, defendant, once again, incorrectly argues that Mr. Dean voluntarily resigned from employment with defendant.

Defendant is wrong. Mr. Dean could perform the essential functions of the position to which he was assigned on the date of his termination. Mr. Dean specifically requested accommodation. Finally, Mr. Dean did not voluntarily resign his employment with defendant. Defendant is not entitled to summary judgment on the failure to accommodate claim.

---

[15]Complaint, ¶¶25, 28.

**SMITH & FJELSTAD**
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

**a.**    **Mr. Dean could perform the essential functions of the position he held immediately prior to his termination.**

Throughout defendant's argument, defendant repeatedly emphasizes that, immediately prior to Mr. Dean's termination, defendant assigned Mr. Dean to work in the Health and Safety Room. When defendant addresses Mr. Dean's ability to perform the essential duties of the position to which he was assigned immediately prior to his termination, however, defendant argues that Mr. Dean was not, on the date of his termination, able to perform (either with or without accommodation) his job duties as a truck driver. Defendant's argument misses the point. Defendant terminated Mr. Dean because he failed to perform job duties in the Health and Safety room. On the date of Mr. Dean's involuntary termination, the question was not whether Mr. Dean could perform the essential job duties of the truck driving position, but whether he could perform (with or without accommodation) the essential duties of the position to which he was assigned–Health and Safety Room.

Throughout its argument, defendant readily admits that Mr. Dean could perform the essential job duties of the Health and Safety Room. Indeed, on March 23, 2011, (although unknown to Mr. Dean, but known to defendant), Mr. Dean's doctor specifically released Mr. Dean (at defendant's request) to perform the essential job duties of individuals assigned to the Health and Safety Room. Defendant's admission and the doctor's authorization, are conclusive evidence that Mr. Dean was qualified to perform the essential functions of his assigned job (Health and Safety Room) either with or without accommodation. Defendant is not entitled to summary judgment on this claim.

To the extent the issue is whether Mr. Dean could perform the essential functions of his position as a truck driver, Mr. Dean concedes that, **at the time of his termination**, he was not released to perform the essential functions of that position without accommodation. Mr. Dean was, however, released to perform the essential functions of his position as a truck driver no later than June 30, 2011. Smith Dec. Ex. F. Thus, Mr. Dean could have, within a reasonable period

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

of time, resumed the performance of his essential job duties either with or without accommodation. Defendant is not entitled to summary judgment.

###### b. Mr. Dean requested accommodation to perform his assigned job duties.

In an effort to defeat Mr. Dean's failure to accommodate claim, defendant continues to ignore controlling law and misrepresents Mr. Dean's deposition testimony. An accurate understanding of the law, when combined with an honest recitation of Mr. Dean's deposition testimony, demonstrates that Mr. Dean notified defendant of his need for accommodation.

A request for accommodation under the ADA need not be in writing and need not formally invoke the words "reasonable accommodation." *Barnett*, 228 F.3d at 1112; *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306, 313 (3rd Cir. 1999). All that is necessary is that the employer know of the disability and the employee's desire for accommodation. *Taylor*, 184 F.3d at 313. Allowing time off, either with or without pay, is one form of accommodation under the ADA. 42 U.S.C. § 12111(9)(B); *Criado v. IBM Corp.*, 145 F.3d 437, 443 (9th Cir. 1998); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 878-79 (9th Cir. 1989). Applying this law to Mr. Dean, it is absolutely clear that defendant knew of Mr. Dean's disability and his desire to continue his employment. Mr. Dean was not required to provide any additional information, or make any specific request, to place defendant on notice of his need and desire for accommodation.

Mr. Dean, however, went beyond his obligations. Defendant points to Mr. Dean's deposition testimony at p. 127, l. 8-21 as "evidence" that Mr. Dean did not specifically request accommodation. Def. Mem. p. 15. Defendant completely fails, however, to place this exchange in context. In context, during Mr. Dean's deposition, defendant's counsel quoted the following language of paragraph 18 of the Complaint: "While employed with defendant, Mr. Dean on more than one occasion requested the defendant accommodate his disability and requested that defendant participate in an interactive process designed to determine whether defendant could accommodate his disability." Defendant's counsel then asked "Do you recall having that discussion with anybody at Safeway." Mr. Dean's counsel objected to the form of the question.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Defendant's counsel made no effort to discuss the objection or clarify the question–a question which clearly used legal terms with which Mr. Dean was not required to be familiar and called for a legal conclusion. Mr. Dean responded with "No, I don't remember." Dean Dep. 127:6-21.

Defendant conveniently ignores, however, that Mr. Dean repeatedly testified that he requested accommodation for performing the Health and Safety Room essential duties. For example, when questioned regarding whether he had told "Eric" (the wellness room supervisor) that he (Mr. Dean) was not going to participate in the wellness room, Mr. Dean testified as follows: "I told him I was taking Vicodin and I didn't have any way to get there to participate in it." Dean Dep. 88:9-15. Subsequently, defendant's counsel asked Mr. Dean: "Did you have any discussions with anybody about light duty or any form of accommodation?" Following an objection from Mr. Dean's counsel, Mr. Dean directly testified: "I asked for them to come out and pick me up, you know. If I've got medication, then need to come and get me. . . That was part of the conversation with Eric then. If you want me to come in here, you know, you have to get me transportation in here. And he just didn't–he didn't respond at all." Dean Dep. 115:8-19. Mr. Dean further testified "And at that point I asked him, you know, I'm taking medication. I can't come in. I says, you know, I need a way in. . . And then he just, nope, and so I went down and talked to Chris. That's one of the reasons I wanted to talk to Chris and then talk to George." Dean Dep. 115:22-116:9. In reference to a conversation with Chris Rooney (Mr. Dean's supervisor), Mr. Dean testified that he expressed concerns about getting to the wellness room because he was taking Vicodin. Dean Dep. 83:2-10.

Mr. Dean's repeated deposition testimony that he would need a ride to the Health and Safety Room a.k.a. wellness room, was a request for accommodation. Defendant's representation that Mr. Dean did not request accommodation is simply false. Defendant is not entitled to summary judgment on this issue.

### c. Defendant failed to accommodate Mr. Dean.

ADA discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless

**Smith & Fjelstad**
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity." 42 U.S.C. §12112(a), (b)(5)(A). Employer's must accommodate disabled employees unless the employer demonstrates that any accommodation would constitute and undue hardship. *See, e.g., McAlindin v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999). "Accommodation is required '*unless* [the employer] can demonstrate that the accommodation would impose an undue hardship.'" *Id.*, *quoting* 42 U.S.C. §12112(b)(5)(A) (emphasis added). Summary judgment on a failure to accommodate claim is appropriate only when the facts "clearly demonstrate" that an accommodation would impose an undue hardship. *McAlindin*, 192 F.3d at 1238.[16]

In this case, defendant does not argue that accommodating Mr. Dean imposed an undue hardship. Consequently, the sole focus relating to Mr. Dean's failure to accommodate claim is whether a reasonable accommodation was available.

The normal *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework does not apply when the issue is whether accommodation was possible because no proof of intent is necessary when the employer has failed to accommodate an employee. *McGary* 386 F.3d at 1266; *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, p. 27 "Burdens of Proof" (EEOC 2001). Rather, to defeat a motion for summary judgment based on failure to accommodate, the plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e. ordinarily or in the run of cases." *U.S. Airways v. Barnett*, 535 U.S. 391, 401-02 (2002). If the employer fails to accommodate an employee when accommodation is possible, the employer has violated the ADA. *Humphrey v. Memorial Hosp. Ass.*, 239 F.3d 1128, 1133 (9th Cir. 2001). Once the plaintiff demonstrates that accommodation is "reasonable," the burden shifts to the employer to provide case-specific evidence proving that reasonable accommodation would have caused undue hardship. *Id.* An employer cannot prevail at the summary judgment stage on a failure to

---

[16]Defendant did not allege an undue hardship defense and should not be allowed to do so at this late date.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

accommodate claim if the employer failed to engage in the interactive process. *Barnett*, 228 F.3d at 1116.

Proof of the following elements establishes a *prima facie* case of failure to accommodate: (1) disability; (2) that plaintiff is able to perform the essential functions of the job with or without accommodation; and (3) the plaintiff suffered an adverse employment action. *Sampler v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012), *citing, Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) and 42 U.S.C. §12112(a),(b)(5)(A). Defendant has not argued that Mr. Dean was not disabled. Additionally, there is no doubt that loss of a job is an adverse employment action. Thus, the only issue is whether Mr. Dean could have performed the essential functions of his job either with or without accommodation.

A plaintiff survives summary judgment on a failure to accommodate claim by providing evidence that a reasonable accommodation was available. *See, e.g., Morton v. United Parcel Service, Inc.*, 272 F.3d 1249,1256 (9th Cir. 2001). The ADA does not require that the accommodation be certain to succeed, or is even likely to be successful. *Humphrey*, 239 F.3d at 1136; *see, also, Kimbro*, 889 F.2d 869. "As long as reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation." *Humphrey*, 239 F.3d at 1136, *quoting*, *Kimbro*, 889 F.2d at 879. The defendant bears the burden of proving the unavailability of a reasonable accommodation. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.2d 944, 950 (8th Cir. 1999).

In this case, defendant easily could have accommodated Mr. Dean in his truck driving job and a *lawful* Health and Safety Room assignment. The Ninth Circuit has clearly held that a leave of absence is a reasonable accommodation. *Humphrey*, 239 F.3d at 1136 ("We have held that where a leave of absence would reasonably accommodate an employee's disability and permit him, upon return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA.") *citing, Nunes*, 164 F.3d at 1247; *Kimbro*, 889 F.2d at 878 ("As long . . . . as there are 'plausible reasons to believe that the handicap [could have been accommodated]'

**SMITH & FJELSTAD**
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

by the a (sic) leave of absence, [the employer] is responsible for its failure to offer such leave.") (citation omitted). Additionally, the ADA does not "require an employee show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation . . . As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation." *Id.*

With respect to the truck driving job, defendant could have accommodated Mr. Dean through simply allowing him time off to obtain treatment and secure his release to return to employment. Indeed, providing Mr. Dean with his protected FMLA/OFLA leave likely would have fully resolved this matter. With respect to the Health and Safety Room, once that allegedly mandatory assignment became lawful (if ever), Mr. Dean may have no longer required Vicodin and could have driven himself to work. If, however, he still could not drive, then defendant could have accommodated his disability by providing him with transportation. Thus, defendant plausibly could have accommodated Mr. Dean in both positions and summary judgment is not appropriate.

### 3. Defendant did not move for summary judgment on Mr. Dean's failure to engage in the interactive process claim.[17]

Defendant did not move for summary judgment on Mr. Dean's claim that defendant failed to engage in the ADA mandated interactive process. Thus, defendant is not entitled to summary judgment on this claim. Even if defendant had moved for summary judgment on this claim, however, the motion would have no merit.

Once an employer becomes aware that an employee requires accommodation, the employer is obligated to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. *Barnett*, 228 F.3d at 1114. Employers who fail to engage in such an interactive process are liable to the disabled employee if a reasonable accommodation was possible. *Id*. at 1116.

[17]Complaint, ¶26, 28.

**SMITH & FJELSTAD**
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Generally, "[t]he interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Id*. at 1112. Once an employer is alerted to the need for accommodation, the employer, using a problem solving approach, should:

> (1) Analyze the particular job involved and determine its purposes and essential functions;
> (2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with reasonable accommodation;
> (3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and
> (4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

29 C.F.R. Pt. 1630, App., §1630.9. If the employer needs additional information, the employer must engage in the interactive process to seek "clarification of the nature of the employee's disability and whether proposed accommodations would meet the employee's needs." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 780, 804 (7th Cir. 2005), *see, also,* 29 C.F.R. Pt. 1630, App., §1630.9. A failure to engage in the interactive process claim requires evidence that: (1) the employer knew about the disability; (2) the employee requested accommodation or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employers lack of good faith. *Cravens v. Blue Cross and Blue Shield*, 214 F.3d 1011, 1021 (8th Cir. 2000), *citing, Fjellestad*, 188 F.3d at 952.

"An employer cannot shield itself from liability by choosing not to follow up on an employee's requests for assistance, or by intentionally remaining in the dark." *EEOC*, 417 F.3d at 804. "A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). "An employee's request for accommodation requires a great deal of communication . . .[T]he courts

Sᴍɪᴛʜ & Fᴊᴇʟsᴛᴀᴅ
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary . . . A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Bultemeyer v. Fort Wayne Comm. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996), *quoting, Beck*, 75 F.3d at 1135.

The great deal of communication required in the interactive process did not occur in this case. Defendant failed to provide Mr. Dean with mandatory protected family leave. Defendant failed to discuss Mr. Dean's need for transportation to participate in the Health and Safety Room. Defendant failed to ask Mr. Dean for additional information. Rather, defendant took the approach of intentionally not placing Mr. Dean on protected leave in an (improper) effort to force him to utilize the Health and Safety Room and then, with knowledge that he could not get to that job assignment, terminated his employment. Defendant is not entitled to summary judgment on this claim.

> ### D. The Workers' Compensation Discrimination Claim Survives Summary Judgment.[18]

"It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS Chapter 656 . . ." ORS 659A.040(1). To establish a *prima facie* case under this statute, Mr. Dean need only identify some evidence which would allow a jury to conclude that (1) he invoked the workers' compensation system; (2) he suffered an adverse employment action; and (3) the adverse employment action was because he invoked the workers' compensation system. *Hardie v. Legacy Health System*, 167 Or. App. 425, 433, 6 P.3d 531, 536 (2000); *Stanich v. Precision Body and Paint, Inc.*, 157 Or.App. 446, 457, 95 P.2d 328 (1997). Defendant does not challenge the first two elements of Mr. Dean's *prima facie* case. Rather, defendant challenges only the third element of the claim and argues that Mr. Dean did not suffer adverse employment consequences because he invoked the workers' compensation system.

---

[18]Sixth Claim for Relief, Complaint ¶¶51-54

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Proof of the causal connection between Mr. Dean's invocation of the workers' compensation system and the adverse employment action may be established either (1) indirectly through a showing that the protected activity was followed closely by discriminatory treatment or through other evidence, such as disparate treatment as compared to other employees; or (2) directly through evidence of discriminatory animus directed towards Mr. Dean. *Boynton-Burns v. University of Oregon*, 197 Or.App. 373, 38–83, 105 P.3d 893, 897-98 (2005) (citations omitted). In this case, several events demonstrate that Mr. Dean was treated differently because he invoked Oregon's workers' compensation protections.

The first event demonstrating that defendant treated Mr. Dean differently because he invoked his workers' compensation rights is that, because Mr. Dean filed a workers' compensation claim, defendant treated him differently than all other employees who qualify for FMLA/OFLA protected leave. Employees are entitled to protected FMLA/OFLA leave for many different reasons. 29 U.S.C. §2612; ORS 659A.159. As demonstrated above, protected FMLA/OFLA leave extends to those who file workers' compensation claims and an employer *cannot* force an injured worker to accept light duty as opposed to exercising his FMLA/OFLA rights. In this case, a jury could conclude that defendant unlawfully denied Mr. Dean protected FMLA/OFLA leave *because* his eligibility for protected FMLA/OFLA leave was based on his on-the-job injury as opposed to any other FMLA/OFLA qualifying condition.[19] The denial of legally protected and legally required leave *because* an employee filed a workers' compensation claim is an adverse employment action (which led to Mr. Dean's termination) based on the employee invoking the workers' compensation system. Defendant is not entitled to summary judgment on this claim.

The second event supporting Mr. Dean's workers' compensation discrimination claim is that defendant assigned Mr. Dean to the Health and Safety room solely because he filed a workers' compensation claim. Mr. Dean suffered his compensable on-the-job injury on February

---

[19]Indeed, it is very unlikely that defendant will admit to other and/or further violations of FMLA/OFLA for reasons unrelated to workers' compensation leave.

Sᴍɪᴛʜ & Fᴊᴇʟsᴛᴀᴅ
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

17, 2011. Def. Mem. P. 6. Defendant admits that Mr. Dean did not immediately file a workers' compensation claim and sought treatment from his personal physician. *Id.* Mr. Dean was not, at that time, assigned to the Health and Safety Room. Dean Dec. ¶6. On March 16, 2011, Mr. Dean filed a workers' compensation claim in connection with the injury he sustained on February 17, 2011. Def. Mem. P. 7. Mr. Dean informed defendant that he had filed the workers' compensation claim and defendant immediately (and illegally) assigned Mr. Dean to the Health and Safety Room. Reserving assignment to the Health and Safety Room for employees who file workers' compensation claims is the epitome of treating those who file workers' compensation claims differently than those who do not file such claims.

The third event supporting this claim is that defendant's policy reserves assignment to the Health and Safety Room for those who report on-the-job injuries. Thomsen Dec. ¶4; Maiorano Dep. 17:13-16. A policy which reserves special treatment for those who file workers' compensation claims is evidence of a discriminatory intent towards those who file such claims.

The fourth event evidencing workers' compensation discrimination is the method with which defendant treated Mr. Dean's prior carpal tunnel injury. Mr. Dean suffered a carpal tunnel injury approximately in 2008 or 2009. Dean Dec. ¶7. Mr. Dean had surgery for the injury. Dean Dep. 36:14-24. Mr. Dean filed a workers' compensation claim but the claim was denied. Dean Dep. 45:10-13; 68:6-23. As he did with his knee injury, Mr. Dean took leave for his carpal tunnel surgery. Dean Dep. 92:16-19. With this injury, Mr. Dean *was not* assigned to the Health and Safety Room. Dean Dep. 93:3-11. Additionally, rather than subjecting Mr. Dean to an onerous call-in policy, Safeway simply required Mr. Dean to notify the company when he was released to return to work. Dean Dep. 107:21-24. A jury could rely on this extremely different treatment which Mr. Dean received following his denied workers' compensation claim as evidence that defendant provides special treatment to those who file accepted workers' compensation claims.

Finally, the "job" duties assigned in the Health and Safety Room are evidence of discrimination and desire to punish employees who file workers' compensation claims. The

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Room is a sedentary classroom environment to work on self-study materials and education on health and safety-related topics. Maiorano Dep. 12:3-8. There are no instructors. Maiorano Dep. 12:9-11. There is exercise equipment available for use, but Mr. Maiorano has not received any experience or training from his employer to assist employees with use of the equipment. Maiorano Dep. 12:12-13:11. Mr. Maiorano's employer did not even provide him with any training program, manuals or booklets for utilizing the equipment in the room. Maiorano Dep. 14:19-24. Mr. Maiorano's employer never evaluated his knowledge of the equipment or tested his knowledge of the equipment. Maiorano Dep. 14:25-15:19.

A "work" day in the room consisted of self paced exercise or walks, study and class time and breaks/lunches. Maiorano Dep. 18:1-12. The "walks" occur on "hundred yards back and forth in a line on flat level surfaces." Maiorano Dep. 18:13-20. During the regular work day, approximately two hours of the day were dedicated to self-paced exercise and walking back and forth on a 100 yard line. Maiorano Dep. 19:24-20:8. Outside of a half-hour lunch and two 15 minute breaks, the remainder of the "work" day was class time. Maiorano Dep. 20:9-15.

"Class time" consisted of Mr. Maiorano providing booklets to employees with worksheets that the employees completed as they read the booklets. Maiorano Dep. 20:16-24. The worksheets are placed in a file and the employee is free to keep the corresponding materials or destroy the materials. Maiorano Dep. 21:6-23. The employee retains the completed worksheets and Mr. Maiorano did not even review the worksheets. Maiorano Dep. 22:4-13. To Mr. Maiorano's knowledge, nobody ever reviews the worksheets. Maiorano Dep. 22:14-16. The booklets are small, approximately eight by four inches. Each booklet covers safety topics from sprains and strains to heart health. The booklets cover a wide range of topics and are not specific to the employee's specific injury. Maiorano Dep. 23:11-25. The booklets fill two filing cabinets and the index covers four pages. Mr. Maiorano, the room supervisor and instructor, has not even reviewed all of the booklets. Maiorano Dep. 24:12-24. The booklets have not changed since Mr. Maiorano began his position at Safeway in 2010. Maiorano Dep. 25:1-6. Mr. Maiorano's employer has ignored his requests for updates to the booklets and worksheets. Maiorano Dep.

**SMITH & FJELSTAD**
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

25:7-26:13.  Mr. Maiorano does not generally provide any presentation or instruction on the materials.  Maiorano Dep. 26:14-25.  No records are kept of how many booklets an employee studies.  Maiorano Dep. 27:8-13.  The assignment to this room is typically a 90 day transitional period.  Maiorano Dep. 27:14-28:6.  A jury could conclude that such monotonous "job" duties were designed to punish injured workers and discourage them from filing workers' compensation claims.

      **E.**     **The Failure to Reinstate An Injured Worker Claim Survives Summary Judgment.[20]**

    A worker who has sustained a compensable injury is entitled to reinstatement to the position the worker held at the time of injury upon demand if the position exists, the position is available and the employee is not disabled from performing the position.  ORS 659A.043(1).  If the employer has made it known that reinstatement will not be considered and an actual demand for reinstatement would be futile, the employee is excused from making a demand for reinstatement.  OAR 839-006-130(7).

    Defendant argues that the failure to reinstate claim must fail because (1) Mr. Dean was not released to return to his truck driving position between March 16, 2011 and his termination on March 25, 2011; and (2) Mr. Dean did not demand reinstatement.  Def. Mem. p. 24.  Both of defendant's arguments fail and defendant is not entitled to summary judgment on this claim.

      **1.**     **Mr. Dean was timely released to return to his truck driving position.**

    "A worker who has sustained a compensable injury shall be reinstated by the workers' employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position."  ORS 659A.043(1).  Reinstatement rights extend for a period of three years following the date of the injury.  ORS 659A.043(3)(a)(F).  Reinstatement rights are terminated only through very specific and delineated events.  *See* ORS 659A.043(3).  The statute *does not*

_____

    [20]Sixth Claim for Relief.  Complaint ¶¶55-59.

**SMITH & FJELSTAD**
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

identify an employer's improper and unlawful denials of protected family leave and/or a leave of absence as a basis for terminating reinstatement rights.

In this case, as demonstrated above, defendant improperly and unlawfully denied Mr. Dean protected FMLA/OFLA leave. The reinstatement statute does not allow defendant to artificially reduce Mr. Dean's reinstatement period to nine days through the breach of applicable law and policy. Thus, if not established as a matter of law, a jury could conclude that Mr. Dean's reinstatement rights extended well beyond March 25, 2011. Summary judgment is not appropriate on this claim based on this argument.[21]

### 2. Mr. Dean was not required to demand reinstatement.

Mr. Dean, on March 30, 2011, filed a grievance regarding his termination. Thomsen Dec. ¶12. On July 14, 2011, the Joint Conference Board denied the grievance. *Id*. Defendant admits that the denial was "final and binding" on Mr. Dean and the union. Thomsen Dec. ¶13.[22] In light of the termination (in violation of FMLA/OFLA and company policy regarding leaves of absence) and the Joint Conference Board decision, a jury could easily conclude that demanding reinstatement would have been futile. Consequently, Mr. Dean was exempt from demanding reinstatement when he was released to return to work in the position he held at the time of his injury. OAR 839-006-130(7). Consequently, the argument defendant presents does not support granting summary judgment on this claim.

---

[21]Defendant *does not* argue that the CBA reduced Mr. Dean's reinstatement rights to less than three years under ORS 659A.043(2). Similarly, defendant *does not* argue that Mr. Dean lost his reinstatement rights under ORS 659A.043(3)(D) because he refused a "bona fide" offer of light duty employment. If defendant presents either of these (or other) arguments in Reply, Mr. Dean respectfully requests the opportunity to submit a written response to such arguments.

[22]The Joint Conference Board *could not* consider Mr. Dean's discrimination claims or that defendant unlawfully failed to place Mr. Dean on protected FMLA/OFLA leave or a leave of absence. CBA §7.5 ("no grievance concerning the termination shall be allowed unless the *sole* issue raised is one of fact as to whether the employee was able to communicate or actually did so.") (emphasis added).

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

In addition to being excused from demanding reinstatement because doing so was futile, defendant fails to demonstrate compliance with the statute sufficient to notify Mr. Dean of his obligation to demand reinstatement. An employee's obligation to demand reinstatement is triggered when the insurer or the self-insured employer sends the employee a certified mail notice that the employee is released for employment. ORS 659A.043(3)(E). Defendant has not offered any evidence that the insurer or the employer ever sent, or Mr. Dean ever received, the required certified mailing. Absent evidence of this mailing, defendant fails to demonstrate that Mr. Dean's obligation to demand reinstatement was ever triggered. Consequently, a jury could conclude that Mr. Dean's obligation to demand reinstatement was not triggered and that Mr. Dean did not surrender his reinstatement rights. Summary judgment is not appropriate.

**F.      Mr. Dean Concedes His ORS 659A.046 Claim.[23]**

The evidence is that Mr. Dean's truck driving job existed at the time he was released to return to work with defendant. Consequently, because he retained his reinstatement rights under ORS 659A.043, the facts in this case did not trigger Mr. Dean's reinstatement rights under ORS 659A.046. Plaintiff's counsel submits, however, that this is a classic example of why a requirement of meaningful conferral regarding summary judgment would benefit both the bench and the bar. Late afternoon voice-mail messages on the date of filing that the defendant is filing a motion for summary judgment does not allow counsel an opportunity to discuss the motion.

**G.      Defendant is Not Entitled to Summary Judgment on the Wrongful Discharge Claim.[24]**

In Oregon, an employer may generally terminate an employee at any time, for any reason, unless doing so violates a contractual, statutory or contractual requirement. *Yeager v. Providence Health Sys. Oregon*, 195 Or.App. 134, 96 P.2d 862, 865 (2004). An employee may bring a claim for wrongful discharge when the discharge is for exercising a job-related right that reflects an important public policy. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th

---

[23]Eighth Claim for Relief.  Complaint, ¶¶60-64.

[24]Fifth Claim for Relief.  Complaint, ¶¶45-50.

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Cir. 2012). One example of an employee exercising a right that reflects an important public policy is taking family leave. *Id.* at 1051 (citations omitted).

In this case, the evidence supports that Mr. Dean exercised his important societal right to take FMLA/OFLA leave as opposed to accepting a light duty assignment in the Health and Safety Room. A jury could conclude that defendant violated FMLA/OFLA through the failure and refusal to place Mr. Dean on FMLA/OFLA. Thus, a jury could conclude that defendant terminated Mr. Dean for "taking leave under" FMLA/OFLA. Defendant is not entitled to summary judgment on the wrongful discharge claim.

## IV.    CONCLUSION

Defendant's entire argument is based on the incorrect assumption that Mr. Dean could not reject the light duty assignment and that he was subject to Section 7.5 of the CBA. Once those incorrect assumptions are dispelled, it is apparent that defendant is not entitled to summary judgment in this case. The court should deny defendant's motion except as conceded.

DATED: March 31, 2014.

SMITH & FJELSTAD

By:  /s/ Kerry M.L. Smith
        Kerry M.L. Smith, OSB #881033
        Of Attorneys for Plaintiff

SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249