Kerry M.L. Smith, OSB No. 881033
SMITH & FJELSTAD
722 N. Main Avenue
Gresham, Oregon 97030
Tel: (503) 669-2242
Fax: (503) 669-2249
E-mail: smithandfjelstad@frontier.com

Attorneys for Plaintiff Robin Dean

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBIN DEAN,<br><br>    Plaintiff,<br><br>v.<br><br>SAFEWAY, INC.,<br><br>    Defendant. | Civ. No. 3:12-CV-01875-PK<br><br>PLAINTIFF'S SUR-RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION.

Defendant Safeway Inc.'s Reply in Support of Motion for Summary Judgment presents several new arguments which defendant did not raise in Defendant Safeway's Memorandum of Law in Support of Motion for Summary Judgment. Four of the new arguments are: (1) The ADA and state law do not require an employer to accommodate an employee in getting to work (Reply, pp. 15-16); (2) Mr. Dean's FMLA/OFLA interference claims fail because Mr. Dean was not released to work as a truck driver until after his 12 weeks of FMLA/OFLA protected leave had expired (Reply, pp. 23-25); (3) Mr. Dean surrendered his workers' compensation reinstatement rights because he refused a bona fide offer of light duty employment; and (4) Mr. Dean

surrendered his workers' compensation reinstatement rights because he failed to timely demand reinstatement. All of these new arguments fail and, consequently, these arguments do not support summary judgment.

**II.   Argument.**

**A.   The Ada and State Law Required Safeway to Accommodate Mr. Dean with Getting to Work in the Health and Safety Room.**

Defendant relies on two unpublished opinions (*Parker v. Verizon Pennsylvania, Inc.*, 2009 U.S. App. LEXIS 2508 (3rd Cir. 2009) and *Wade v. General Motors Corp.*, 1998 U.S. App. LEXIS 22626 (6th Cir. 1998)) as well as alleged and un-cited EEOC "Informal Guidance" letters to argue that reasonable accommodation does not include providing commuting assistance for employees. Reply, pp. 15-16. Defendant's argument is incorrect.

In *Livingston v. Fred Meyer Stores, Inc.*, 388 Fed. Appx. 738, 2010 U.S. App. LEXIS 15044 (9th Cir. 2010), the Ninth Circuit plainly rejected Fred Meyer's argument that the ADA does not require the employer to accommodate "commute-related limitations." *Id*. at *4. The court could not have been clearer when it stated "[w]e disagree" with Fred Meyer's contention that "the duty to accommodate does not extend to 'commute-related limitations.'" *Id*.[1] Further, the court stated "[w]e have recognized that an employer has a duty to accommodate an employee's limitations in getting to and from work." *Id*., *citing Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001). "Employers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job." *Id.* at 5, *quoting Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993). Defendant's

---

[1]Defense counsel in *Livingston* was the same Portland law firm which represents defendant in this action.

argument that there was no duty to accommodate Mr. Dean with getting to his job assignment in

the health and safety room (assuming the court determines there is no evidence that Mr. Dean lawfully rejected that job assignment) is contrary to Ninth Circuit authority.

Defendant's reliance on the *unpublished* Third Circuit opinion in *Parker* is misplaced because *Parker* is not controlling authority in the Third Circuit. In *Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3rd Cir. 2010) (a published opinion issued following *Parker*), the panel held that the ADA does not limit an employer's duty to accommodate to only those problems that an employee has in performing his essential job duties once the employee arrives at work. *Id*. at 505. Rather, "under certain circumstances the ADA can obligate an employer to accommodate an employee's disability related difficulties in getting to work, if reasonable." *Id*. at 505, *see, also, Lyons v. Legal Aid Society*, 68 F.3d 1512, 1517 (2nd Cir. 1995) ("there is nothing inherently unreasonable . . . in requiring an employer to furnish an otherwise qualified disabled employee with assistance related to her ability to get to work."), *Nixon-Tinkelman v. N.Y. City Dep't of Health & Mental Hygiene*, 2011 U.S. App. LEXIS 16569, *6 (2nd Cir. 2011) ("in certain circumstances, an employer may have an obligation to assist in an employee's commute . . . Determining whether a particular commuting accommodation is reasonable normally involves a fact-specific inquiry.")[2], *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506 (1st Cir. 1996).

The controlling authority is that Safeway was obligated to accommodate Mr. Dean's commute, or, at a minimum, engage in the interactive process to determine if a reasonable accommodation existed. Safeway, contrary to this obligation, did not accommodate Mr. Dean

---

[2]There is no evidence in the present record that defendant engaged in a fact-specific inquiry in response to Mr. Dean's request for assistance with getting to work.

**Plaintiff's Sur-Response to Defendant's Motion for Summary Judgment** - Page 3 of 11

and did not engage in the interactive process. Rather, Safeway denied Mr. Dean's request for assistance in getting to work without providing any dialogue or explanation of its decision. Thus, there is a triable issue of fact that Safeway failed to engage in the interactive process in good faith. *Livingston*, at *6. This is especially true in this case because a jury could reasonably conclude that Safeway could have assisted Mr. Dean with getting to work or, given the nature of the job duties in the Health and Safety Room, even allowed him to work from home. Defendant is not entitled to summary judgment on the failure to accommodate claim.

    **B.    Mr. Dean Did Not Receive the FMLA/OFLA Leave to Which He Was Entitled.**

Defendant argues, for the first time in its Reply, that Mr. Dean cannot prevail on his FMLA/OFLA interference claims because Mr. Dean received all of the FMLA/OFLA leave time (12 weeks or 84 days) to which he was entitled. Defendant's analysis is incorrect because Mr. Dean did not receive *any* of the leave to which he was entitled. Rather than granting Mr. Dean twelve weeks of leave, defendant terminated his employment. The termination *prior* to granting Mr. Dean any protected leave generates numerous questions of fact as to what events would have, or could have, occurred if defendant had simply complied with FMLA/OFLA obligations.

Employers subject to both FMLA and OFLA (as Safeway) must apply the provision of FMLA or OFLA that is more beneficial to the employee's circumstances. OAR 839-009-0220. "Unforeseeable leave" is leave taken as a result of an employee's unexpected serious health condition." OAR 839-009-0210(21)(a). When leave is taken for an unforeseeable situation, "the employee must give verbal or written notice within 24 hours before or after commencement of the leave . . . *The employer may require written notice by the employee within three days of the*

*employee's return to work.*" OAR 839-009-0250(3) (emphasis added).[3] Providing notice even three days after returning to work, however, is excused if the employee suffers an on the job injury and rejects light duty. OAR 839-009-0250(12) ("An employee who refuses an offer of [light duty] employment . . . (a) Automatically commences a period of OFLA leave upon refusing the offer of employment and (b) Need not give notice to the employer that would otherwise be required by this rule that the employee is commencing a period of leave."). "An employer may not [under any circumstances] delay the use of OFLA leave when medical verification is not received before the commencement of unforeseeable leave. The employer may designate the leave as provisionally approved, subject to medical verification." OAR 839-009-0260(7).

In this case, there is evidence from which a fact finder could conclude that Mr. Dean rejected the offer of light duty work and automatically commenced a period of FMLA/OFLA leave. Thus, under the applicable regulations, Mr. Dean was on OFLA leave and entitled to twelve weeks of protected leave (with his right to job reinstatement). Rather than honor that right, however, Safeway quickly moved to terminated Mr. Dean. Thus, unlike the plaintiff's in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), *Nelson v. Unified Grocers, Inc.*, 2012 U.S. Dist. LEXIS 4430 (2012) or *Ambrose v. J.B. Hunt Transp. Inc.*, 2014 U.S. Dist. LEXIS 18361 (2014), Mr. Dean did not receive the leave to which he was entitled. Rather, Mr. Dean did not receive any protected leave.

The Ninth Circuit has determined that an employee need not necessarily prove damages

---

[3]Defendant's policy similarly extends the period of written notice of the need for OFLA leave under defendant's Leave of Absence policy to "three days after the employees [sic] return to work." Smith Dec., Ex. G, p. 1. In this case, defendant terminated Mr. Dean before he returned to work so, even under defendant's policy, defendant terminated Mr. Dean *before* Safeway's policy even required him to submit a written Leave of Absence request.

**Plaintiff's Sur-Response to Defendant's Motion for Summary Judgment** - Page 5 of 11

to establish a prima facie case of FMLA/OFLA interference. *Liu v. Amway Corp*, 347 F.2d 1125, 1135 (9th Cir. 2003). "A violation of FMLA simply requires that the employer deny the employee's entitlement to FMLA leave." *Id*. *Liu* is directly on point because the court reversed summary judgment for an employer who mischaracterized FMLA qualifying leave as personal leave even though there was no practical difference between the personal leave she was granted and the FMLA leave to which she was entitled. *Id*. In this case, the failure to automatically provide Mr. Dean with protected leave took him outside of FMLA/OFLA regulations and subjected him to defendant's call-in policy, a policy which defendant quickly used to terminate his employment. If Safeway had appropriately designated his absences as protected leave, Mr. Dean would not have been subject to termination. *See, Id*.

The immediate granting of FMLA/OFLA leave when Mr. Dean rejected light duty would have protected Mr. Dean from unlawful termination. Defendant's Leave of Absence policy, while confusing, grants a minimum of six months (with the possibility of six additional months) of protected leave.[4] The record demonstrates that Mr. Dean was released to his regular job no later than June 30, 2011 (Smith Dec. Ex. F), well within both the six month leave policy and the permissible six month extension. Thus, defendant, through Mr. Dean's termination rather than his proper automatic placement on FMLA/OFLA leave, interfered with Mr. Dean's rights, kept him subject to the call in policy, and terminated his employment before his FMLA/OFLA rights, or his leave of absence rights, had expired. Thus, to the extent actual harm is necessary to support this claim, Mr. Dean's termination (rather than placement on a minimum of six months

---

[4]The policy is confusing because the terms initially relate to "illness or injury (off the job)" yet grants leave "for period of time [not] in excess of six (6) months, unless the leave is due to illness or injury off the job, in which case the leave shall not exceed twelve (12) months." Brown Dec., Ex. A, p. 88 of 115, Section 21.3(a).

**Plaintiff's Sur-Response to Defendant's Motion for Summary Judgment** - Page 6 of 11

leave of absence) is actual harm. That termination was a direct result of defendant's interference with his right to immediate and automatic protected FMLA/OFLA leave.

In addition to a Leave of Absence, defendant provides that an employee "injured on the job may be offered light duty work." Brown Dec. p. 88 of 115. There is no indication in the record or in the law that Safeway's light duty program was limited to those who initially elected participation in the light duty program over the exercise of FMLA/OFLA rights. In other words, there is nothing in the policy, the law or the CBA which prohibits an employee from taking 12 weeks of FMLA/OFLA leave and, if not released to work at the end of the 12 week period, opting at that point to participate in the Health and Safety Program. Indeed, the record indicates that the failure to participate in the program, absent a medical excuse, is grounds for discipline up and, including, termination. Thus, by denying Mr. Dean his absolute right to opt out of light duty and utilize FMLA/OFLA protected leave, defendant denied Mr. Dean the opportunity to utilize the Health and Safety Program at the conclusion of his FMLA/OFLA protected leave.[5]

Finally, Mr. Dean was released to work no later than June 30, 2011, approximately 20 days after his protected FMLA/OFLA leave would have expired.[6] With the required notice of his

---

[5] The facts do not support an argument that workers injured on the job who opt to exercise their FMLA/OFLA rights forfeit the opportunity, at the expiration of their FMLA/OFLA leave, to utilize the Health and Safety Program. Indeed, if it was the policy/practice that employees who opt to exercise their FMLA/OFLA rights are forfeiting their ability to participate in the Health and Safety Program, such a policy/practice would discourage the exercise of guaranteed FMLA/OFLA rights and punish those who utilize such rights. A policy which discourages the use of FMLA/OFLA or punishes the use of leave, violates FMLA/OFLA.

[6] Contrary to defense counsel's representation at oral argument that defendant could challenge a medical release and delay Mr. Dean's return to work, the June 30, 2011, medical release is prima facie evidence of Mr. Dean's ability to perform his essential job duties as a truck driver. ORS 659A.043(1). The workers' compensation reinstatement statute does not create a

FMLA/OFLA rights, Mr. Dean could easily have returned to his health care provider before his protected leave expired, discussed his condition and sought release to return to his regular job before the expiration of his leave entitlement. Dean Dec. II, ¶2. Due to his discharge, however, Mr. Dean had no reason to engage in this discussion with his health care provider. Defendant should not be allowed to use a termination and an unlawful denial of notification of FMLA/OFLA rights to take advantage of Mr. Dean's lack of knowledge and insulate itself from liability. A fact finder could conclude that, with proper notice, Mr. Dean could have obtained his release to return to work prior to the expiration of his leave and, therefore, that Safeway interfered with his FMLA/OFLA rights.

### C. Defendant Did Not Make a Bona Fide Offer of Light Duty.

In the Reply, defendant argues for the first time that Mr. Dean sacrificed his workers' compensation reinstatement rights because he declined a "bona fide offer for suitable light duty." Reply, P. 30. The reality is, however, that defendant did not make a "bona fide offer for suitable light duty employment."

ORS 659A.043(3)(a)(D) does not specify the elements of a "bona fide offer from the employer of light duty or modified employment that is suitable prior to becoming medically stationary." Under the workers' compensation laws, however, the insurer (or self insured employer) may cease paying temporary total disability compensation only if:

> (a) The employer or insurer:
> (A) Notifies the attending physician or authorized nurse practitioner of the physical tasks to be performed by the injured worker;

---

mechanism for defendant to challenge the release or delay Mr. Dean's return to work while defendant determines whether management agrees with the release. Similarly, FMLA/OFLA do not contain such mechanisms.

**Plaintiff's Sur-Response to Defendant's Motion for Summary Judgment** - Page 8 of 11

Smith & Fjelstad
722 N. Main
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

(B) Notifies the attending physician or authorized nurse practitioner of the location of the modified work; and

(C) Asks the attending physician or authorized nurse practitioner if the worker can, as a result of the compensable injury, physically commute to and perform the job.

(b) The attending physician or authorized nurse practitioner agrees the employment appears to be within the worker's capabilities and the commute is within the physical capacity of the worker; and

(c) The employer or insurer has confirmed the offer of employment **in writing** to the worker . . .   OAR 436-060-0030(5).[7]

The record clearly demonstrates that defendant, in this case, did not provide Mr. Dean with a written light duty job offer *after* his attending physician approved the job.[8] Utilizing the test for terminating temporary total disability benefits as the test for determining whether an employer has made a bona fide light duty offer under ORS 659A.043(3)(a)(D) is logical and practical.  Doing so keeps the workers' compensation statue and the reinstatement statutes consistent and provides reasonable guidance to employers and employees alike.  Defendant did not make a bona fide written light duty job offer under the workers' compensation statutes or rules and, therefore, Mr. Dean's failure to accept the Health and Safety Room assignment did not forfeit his reinstatement rights.

If the court elects to not apply the workers' compensation light duty job offer requirements to this case, a fact finder could still conclude that defendant did not make a bona fide light duty job offer to Mr. Dean.  When Mr. Dean first reported to the Health and Safety

---

[7]Safeway's Job Offer Letter is consistent with the administrative rule.  Smith Dec. Ex. D. Thus, a jury could conclude that even Safeway agrees that a bona fide job offer requires compliance with the administrative rule.  There is no doubt that Mr. Dean did not receive a completed formal Job Offer Letter from Safeway prior to his termination.  Dean Dec. II, ¶3.

[8]Indeed, the only evidence in the record is that Mr. Dean received blank pages from defendant well *before* Mr. Dean's doctor approved his assignment to the Health and Safety Room.

**Plaintiff's Sur-Response to Defendant's Motion for Summary Judgment** - Page 9 of 11

Room, Mr. Maiorano, as Safeway's agent, presented Mr. Dean with a *blank* Physician's Return-to-Work Recommendations and a *blank* Temporary Modified Job Duty Job Tasks sheet (Smith Dec. Ex. C, pp. 2-4). Dean Dec. II, ¶4. The record clearly demonstrates that Mr. Dean's doctor completed these forms on March 23, 2011, and faxed them directly to Safeway. Smith Dec. Ex. E, pp. 1-3. Mr. Dean did not see these documents in a completed form. Dean Dec. I, ¶5. Mr. Maiorano also presented Mr. Dean with a *blank* Job Offer Letter (Smith Dec. Ex. D). Dean Dec. II, ¶5. Mr. Dean never saw a completed version of the Job Offer Letter. Dean Dec. II, ¶5. Thus, the only evidence in the record is that Mr. Dean's doctor approved him to work in the Health and Safety Room on March 23, 2011 and Safeway, as the insurer, *never* relayed this information to Mr. Dean or presented him with a completed Job Offer Letter. This court should hold, or at a minimum a jury could conclude, that presenting Mr. Dean with blank forms seeking authorization to place Mr. Dean in the Health and Safety Room and the absolute failure to supply Mr. Dean with completed forms, fails to satisfy defendant's obligation to make a "bona fide" light duty job offer to Mr. Dean.

**D.     Mr. Dean Did Not Fail to Make a Timely Demand for Reinstatement.**

In the Reply, defendant argues, for the first time, that Mr. Dean surrendered his reinstatement rights because he "had seven days from the date he was notified by his physician that he was released to return to work to demand reinstatement." Reply, pp. 30-31. Defendant references ORS 659A.043(3)(a)(E) for this argument. The reference, however, is incorrect and an obvious misstatement of the statute.

An accurate reading of ORS 659A.043(3)(a)(E) is that an employee surrenders his reinstatement rights if "seven days elapse from the date that the worker is notified **by the insurer or self-insured employer by certified mail that the worker's attending physician or a nurse**

**practitioner** . . . has released the worker for employment" before the employee demands reinstatement. ORS 659A. 043(3)(a)(E) (emphasis added). There is no evidence in the record that defendant or defendant's insurer ever sent a certified letter to Mr. Dean notifying Mr. Dean that his attending physician or nurse practitioner had released him for regular duty. Mr. Dean testifies that he never received such a letter. Dean Dec. II, ¶6. Defendant's incorrect reading of the statute does not alter the facts or the actual law. Mr. Dean did not surrender his reinstatement rights due to an alleged failure to demand reinstatement.

### III.  CONCLUSION

Defendant raises at least four new arguments in the Reply Memorandum. Each of those arguments fail. First, the ADA and state law required Safeway to accommodate Mr. Dean's commute to the Health and Safety Room. Second, the failure to place Mr. Dean on protected FMLA/OLFA leave interfered with his rights to protected leave and improperly denied him leave under defendant's leave of absence policy which would have protected his absences through his full release on June 30, 2011. Third, defendant failed to make a bona fide light duty job offer to Mr. Dean and, consequently, Mr. Dean did not surrender his workers' compensation reinstatement rights. Finally, Mr. Dean did not receive a certified letter from Safeway (or Safeway's insurer) advising him that his doctor had released him to employment in his prior position. Because Safeway did not comply with the statute, Mr. Dean was not notified of his obligation to demand reinstatement and, therefore, did not fail to properly demand reinstatement.

DATED: May 5, 2014.

        SMITH & FJELSTAD

        By: /s/ Kerry M.L. Smith
           Kerry M.L. Smith, OSB #881033
           Of Attorneys for Plaintiff