IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN DEAN,

                       Plaintiff,                         3:12-cv-01875-PK

v.                                           FINDINGS AND
                                           RECOMMENDATION

SAFEWAY, INC.,

                       Defendant.

_____

PAPAK, Magistrate Judge:

     Plaintiff Robin Dean brings this action against defendant Safeway, Inc. ("Safeway")

arising out of Safeway's termination of Dean's employment after Dean suffered an on-the-job

injury.  Now before the court is Safeway's motion for summary judgment (#20).  For the reasons

set forth below, the motion for summary judgment should be granted in part and denied in part.

Page 1 - FINDINGS AND RECOMMENDATION

## FACTUAL BACKGROUND[1]

### I.    Players

Dean worked for Safeway as a truck driver from 1994 until March 25, 2011.  Ex. A,

Declaration of Lisa Brown ("Brown Decl."), #22, at 19, 112.  As of the date of his separation

from employment, Dean worked as an "extra-board" driver, meaning that Safeway would contact

Dean would it needed him to work.  *Id.* at 109.  At all relevant times, Chris Rooney was Dean's

supervisor at Safeway, Erin Skerjanec was another supervisor at Safeway, and Eric Maiorano

was a Proof Positive Consulting ("Proof Positive") employee that managed Safeway's health-and-

safety room at the Clackamas, Oregon, distribution center.  *Id.* at 71, 85; Ex. H, Declaration of

Kerry Smith ("Smith Decl."), #30-5, at 2.

### II.    Union Contract

While at Safeway, Dean was a member of the Teamsters Union Local No. 305 ("Local

305").  Ex. A, Brown Decl., #22, at 20.  As a member of the Local 305, Dean was bound by the

April 18, 2010 through April 18, 2015 collective-bargaining agreement ("CBA") between

Safeway and the union.  Ex. 1 to Ex. A, Brown Decl., #22.  Relevant to the instant action is

Paragraph 7.5 of the CBA, which provides:

> Any employee temporarily absent from work for any reason other
> than vacation, approved leave of absence, or hospitalization when
> the employee is unable to communicate, must personally report his
> status daily by telephone to his supervisor or other designated
> Employer representative prior to the beginning of his regularly
> scheduled shift.  If the length of absence is known in advance, the
> obligation to report shall be once a week beginning with the

---

[1]  The following recitation constitutes my construal of the evidentiary record in light of
the legal standard governing motions for summary judgment under Federal Rule of Civil
Procedure 56.

employee's first scheduled working day of each week for which the
employee is unavailable, unless modified by mutual agreement in
writing, with a copy to the Union.  This once per week reporting
privilege applies only when the employee actually calls in as
required on the first day of the workweek.  Failure of an employee
to report as required by this Paragraph for one day shall result in
disciplinary action up to and including suspension; failure to report
for two (2) scheduled work days shall be deemed a voluntary quit,
and no grievance concerning the termination shall be allowed
unless the sole issue raised is one of fact as to whether the
employee was able to communicate or actually did so.  Any
employee participating in the Employer's light duty work program
as a result of industrial injury shall be subject to all provisions of
this Paragraph, except that instead of reporting to his regular
supervisor, the injured employee shall report to the immediate
supervisor of the department to which he has been assigned.

*Id.* at 7.  Also relevant is Article 21, which addresses how an employee may request a leave of

absence.  *Id.* at 22.  Specifically, Paragraph 21.2 provides: "Employees shall request leaves of

absence in writing on an authorized Leave of Absence form."  *Id.*

## III.    Health-and-Safety Room

At its Clackamas, Oregon, distribution center, Safeway has a health-and-safety room, also

known as the wellness room, where an injured employee who has filed a workers' compensation

claim may report if he or she is released to a light-duty or modified-duty status.  Ex. H, Smith

Decl., #30-5, at 2, 5.  Safeway contracts with Proof Positive for services related to the health-

and-safety room.  *Id.* at 5.  At the health-and-safety room, employees work in a classroom

environment where they review booklets or pamphlets on health and safety-related topics.  *Id.*

There is also exercise equipment available in the room and a designated area for employees to

walk.  *Id.* at 5, 7.  In March 2011, employees assigned to the health-and-safety room were to

report at 11:00 a.m. and stay until 7:30 p.m., Monday through Friday.  *Id.* at 3, 6.  In March 2011,

Page 3 - FINDINGS AND RECOMMENDATION

Maiorano was the sole manager of the health-and-safety room. *Id.* at 2. Pursuant to his duties as manager of the health-and-safety room, Maiorano prepared a weekly report that was transmitted to Rooney. *Id.* at 4.

## IV.    Dean's Injury and Termination

On February 17, 2011, Dean was working on a loading dock when he injured his knee. Ex. B, Smith Decl., #30-3, at 1. Dean reported the injury to Rooney and then went to the health-and-safety room. *Id.*; *see also* Ex. A, Smith Decl., #30-1, at 9. At the health-and-safety room, Maiorano observed Dean's knee, noting that it was swollen and that Dean walked "with a noticeable limp and grimace to pain." Ex. B, Smith Decl., #30-3, at 1. Dean declined to file a workers' compensation claim at that time and stated that he would "probably see his own physician through Kaiser." *Id.* Dean did not ask for a leave of absence because he "just thought [he] had a bummed up knee" and that he "could man through it." Ex. A, Smith Decl., #30-1, at 9.

Dean, however, continued to experience pain in his right knee and, on March 16, 2011, he saw at physician at Kaiser. *Id.*; *see also* Ex. A, Declaration of Robin Dean ("Dean Decl."), #31-1, at 2. The Kaiser physician diagnosed Dean with a sprain or strain of his right knee and provided him a workers' compensation form to present to Safeway. Ex. A, Dean Decl., #31-1, at 2; *see also* Ex. A, Smith Decl., #30-1, at 7 (noting that someone at Kaiser gave him a form and stated, "'Make sure you give this to your employer'"). The form indicated that Dean was to undergo treatment for approximately two to three weeks and that he was to return to the clinic in one week. Ex. A, Dean Decl., #31-1, at 2. The form also indicated that Dean was subject to modified-duty restrictions, including "[n]o vehicle operation for work." *Id.*

After Dean left Kaiser, he immediately went to Safeway. Ex. A, Smith Decl., #30-1, at 7.

Page 4 - FINDINGS AND RECOMMENDATION

Dean handed the form he had received from Kaiser to the dispatcher on duty and stated that he "would be off work [for] two to three weeks." *Id.* The dispatcher told Dean to call Rooney in the morning. *Id.* at 7, 10. While at Safeway, Dean completed a workers' compensation claim form. *See* Ex. B, Declaration of Mary Beth Thomsen ("Thomsen Decl."), #23, at 1. Later that day after Dean left Safeway,[2] Rooney called Dean. Ex. A, Smith Decl., #30-1, at 10. During their conversation, Rooney told Dean to report to the health-and-safety room. *Id.* at 10. Dean expressed concern about driving to the health-and-safety room because he was taking Vicodin. *Id.* Rooney responded that Dean should not take the medication. *Id.*

As instructed, Dean reported to the health-and-safety room on March 17, 2011. *Id.*; *see also* Ex. B., Smith Decl., #30-2, at 3. In the health-and-safety room, Maiorano gave Dean some paperwork to review, including a temporary job offer letter. Ex. A, Smith Decl., #30-1, at 8; *see also* Ex. B, Smith Decl., #30-3, at 2. After Dean spent forty-five minutes reviewing the letter, he declined to review any additional paperwork, telling Maiorano that "'he just can't do this'" and that the light-duty program was too restrictive. Ex. B., Smith Decl., #30-3, at 2. Dean also told Maiorano that he was taking Vicodin and did not have any way of getting to the distribution center to participate in the program. Ex. A, Smith Decl., #30-2, at 11. Maiorano advised Dean to speak with a supervisor and Dean then left the health-and-safety room to speak with Rooney and his shop steward. Ex. A, Smith Decl., #30-1, at 8; Ex. B., Smith Decl., #30-3, at 2. Rooney was out for lunch and Dean's shop steward was also gone, so Dean spoke with Skerjanec. Ex. A, Smith Decl., #30-2, at 11. After Dean sat down in Skerjanec's office, she said, "'You look

---

[2] Although the exact date of the call is not clear in the record, it appears that Rooney spoke with Dean the same date that Dean turned in the Kaiser form to the dispatcher.

terrible,'" to which Dean responded, "'Well, I feel terrible.'" *Id.* Skerjanec then told Dean to go

home. *Id.* Following his conversation with Skerjanec, Dean returned to the health-and-safety

room and told Maiorano that Skerjanec had "authorized him to take a sick day." Ex. B., Smith

Decl., #30-3, at 2. Dean also told Maiorano that he did "not want to participate in the [health-

and-safety-room] program." *Id.* When Maiorano advised Dean of the "repercussions" of not

starting the health-and-safety-room program,[3] Dean "stated that he [did] 'not need the money' and

that he would 'rather just stay home and take care of it [himself].'" *Id.* After Dean left the health-

and-safety room, Maiorano made an entry in the weekly report summarizing his exchange with

Dean. Ex. H, Smith Decl., #30-5, at 4.

On March 18, 2011, the following day, Dean called the health-and-safety room to report

that he was sick and would not be in attendance. Ex. B, Smith Decl., #30-3, at 2; *see also*

Thomsen Decl., #23, ¶ 7. Dean further advised "that he would not be using the services of the"

health-and-safety room. Ex. B, Smith Decl., #30-3, at 2. Maiorano "advised [Dean] that he

need[ed] to call his supervisor," to which Dean responded, "'yes, I will.'" *Id.* On March 21, 22,

and 23, 2011, Dean neither reported to the health-and-safety room nor called the health-and-

safety room or any of his supervisors to report his absences. Thomsen Decl., #23, ¶ 8.

On March 23, 2011, Dean had another appointment with his Kaiser physician. Ex. E,

Smith Decl., #30-4, at 1. That same date, his physician completed a Physician's Return-to-Work

Recommendations form, which listed Dean's physical limitations and specified what work he

---

[3] It is not clear what "repercussions" Maiorano told Dean he would face. During his
deposition, Maiorano testified that he did not recall exactly what he told Dean but, to the best of
his recollection, he relayed the consequences of not completing a scheduled shift, which range
from a written reprimand to termination. Ex. H, Smith Decl., #30-5, at 3-4.

was capable of performing. *See id.* On the third page of the form is an "Employee Section" where an employee may indicate whether he or she accepts the modified work recommended by his or her physician. *Id.* at 3. Although Dean's Kaiser physician filled out the form, the "Employee Section" is blank. *Id.* Dean's physician faxed a copy of the Physician's Return-to-Work Recommendations to Safeway on March 23, 2011, *see* Ex. B, Smith Decl., #30-3, at 3, but Dean never received a copy of the document, *see* Dean Decl., #31, ¶ 5.

On March 24, 2011, Dean neither reported to the health-and-safety room nor called the health-and-safety room or any of his supervisors to report his absence. Thomsen Decl., #23, ¶ 10. On March 25, 2011, Safeway sent Dean a letter, stating:

> In accordance with paragraph 7.5 of your contract[,] an employee is required to show up for their [sic] regular scheduled work or call in and you did neither for more than two days.
>
> Your failure to perform the duties in accordance to the contract has resulted in this voluntary quit; therefore we are moving forward with termination of your employment and processing your final pay.

Ex. C, Thomsen Decl., #23, at 1; *see also* Ex. A, Smith Decl., #30-1, at 5 (noting that Dean received "a letter in the mailbox saying [he] abandoned [his] job").

After Dean received the March 25, 2011 letter, he contacted his union representative and filed a grievance for wrongful termination. Ex. A, Smith Decl., #30-1, at 4; *see also* Thomsen Decl., #23, ¶ 12. "A Joint Conference Board was convened with two members selected by the Union and two members selected by Safeway." *Id.* After hearing testimony and receiving evidence from the parties, the Joint Conference Board denied Dean's grievance on July 14, 2011. *Id.*; *see also* Ex. D, Thomsen Decl., #23, at 1.

Page 7 - FINDINGS AND RECOMMENDATION

On February 10, 2012, Dean filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI"), alleging that Safeway violated his rights by discriminating against him because he filed a workers' compensation claim; violated Oregon law by failing to reinstate him; violated the Americans with Disabilities Act ("ADA") and Oregon law by discriminating against him on the basis of his disability, by failing to accommodate his disability, or by failing to engage in an interactive process to determine whether Safeway could accommodate his disability; and violated his rights under the Oregon Family Leave Act ("OFLA").  Ex. 5 to Ex. A, Brown Decl., #22, at 1-2.  On July 25, 2012, BOLI dismissed Dean's complaint on the basis that there was not "sufficient evidence to continue [its] investigation."  Ex. E, Thomsen Decl., #23, at 1.[4]

## PROCEDURAL BACKGROUND

On October 18, 2012, Dean initiated the instant action, alleging that: (1) Safeway discriminated against him on the basis of his disability, failed to accommodate his disability, and failed to engage in an interactive process to determine whether it could accommodate his disability in violation of the ADA and Oregon law (first and second claims); (2) Safeway denied him his rights under the Family and Medical Leave Act ("FMLA") and the OFLA, interfered with such rights, or retaliated against him for exercising or attempting to exercise such rights (third and fourth claims); (3) Safeway wrongfully discharged him for asserting his OFLA rights (fifth

---

[4]  I note that Dean contends that BOLI's dismissal letter is "not admissible evidence in this matter and is not relevant to the issues before this court."  Dean's Resistance to Motion for Summary Judgment, #29, at 8.  Because I have not considered the letter in my analysis below, I decline to make a finding at this time as to whether the letter is admissible evidence.  *See Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999) (holding that "an agency's determination that insufficient facts exist to continue an investigation is not *per se* admissible" and that a district court "must weigh the letter's prejudicial effect against its probative value pursuant to [Federal Rule of Evidence 403]").

claim); (4) Safeway denied him his FMLA and OFLA rights and/or terminated his employment because he applied for benefits under Oregon's workers' compensation system (sixth claim); and (7) Safeway failed to reinstate Dean after he was medically released to perform his job duties as a trucker driver in violation of Oregon Revised Statute ("ORS") § 659A.043 (seventh claim).[5] *See* Complaint, #1, ¶¶ 21-59.

Safeway filed the instant motion for summary judgment (#20) on February 27, 2014, requesting that the court grant judgment in Safeway's favor on all seven of Dean's claims. On March 31, 2014, Dean filed a resistance to the motion for summary judgment (#29). On April 17, 2014, Safeway filed a reply in support of the motion for summary judgment (#33). The court heard oral argument on the motion on April 22, 2014. At oral argument, the court authorized Dean to file a surreply to address several new issues raised in Safeway's reply. On May 5, 2014, Dean filed his surreply (#39) and, after receiving permission from the court, Safeway filed a response to Dean's surreply (#43) on May 16, 2014. The matter is fully submitted and ready for decision.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for

---

[5] Under Dean's eighth claim for relief, he alleges that Safeway failed to reinstate him to another suitable and available position. *See* Complaint, #1, ¶¶ 61-64. In his resistance to the motion for summary judgment, Dean abandons his eighth claim. *See* Dean's Resistance to Motion for Summary Judgment, #29, at 33.

trial.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The substantive law governing a claim or defense determines whether a fact is material.  *See*

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).  In evaluating a

motion for summary judgment, the district courts of the United States must draw all reasonable

inferences in favor of the nonmoving party and may neither make credibility determinations nor

perform any weighing of the evidence.  *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990).

## DISCUSSION

Safeway moves for summary judgment on Dean's FMLA and OFLA claims, his common-

law wrongful-discharge claim, his disability claims, his workers' compensation discrimination

claim, and his failure-to-reinstate claim.  Before addressing Safeway's specific arguments with

regard to each claim, I consider Safeway's recurring argument that Dean cannot succeed on any

of his claims because he voluntarily quit his position when he failed to comply with the call-in

requirement outlined in Paragraph 7.5 of the CBA.

## I.    Call-In Requirement

First, Safeway argues that all of Dean's claims fail because, for each claim, Dean must

show that he suffered an adverse employment action.  Safeway contends that Dean is unable to

make this showing because, pursuant to Paragraph 7.5 of the CBA, he voluntarily quit his job

when he failed to report his absences on March 21, 22, 23, 24, and 25, 2011.  Pursuant to

Paragraph 7.5:

>           Any employee temporarily absent from work for any reason other

Page 10 - FINDINGS AND RECOMMENDATION

than vacation, approved leave of absence, or hospitalization when the employee is unable to communicate, must personally report his status daily by telephone to his supervisor or other designated Employer representative prior to the beginning of his regularly scheduled shift.  If the length of absence is known in advance, the obligation to report shall be once a week beginning with the employee's first scheduled working day of each week for which the employee is unavailable, unless modified by mutual agreement in writing, with a copy to the Union.  This once per week reporting privilege applies only when the employee actually calls in as required on the first day of the workweek.  Failure of an employee to report as required by this Paragraph for one day shall result in disciplinary action up to and including suspension; failure to report for two (2) scheduled work days shall be deemed a voluntary quit, and no grievance concerning the termination shall be allowed unless the sole issue raised is one of fact as to whether the employee was able to communicate or actually did so.  Any employee participating in the Employer's light duty work program as a result of industrial injury shall be subject to all provisions of this Paragraph, except that instead of reporting to his regular supervisor, the injured employee shall report to the immediate supervisor of the department to which he has been assigned.

Ex. 1 to Ex. A, Brown Decl., #22, at 7.  Safeway contends that Dean was participating in the light-duty program, he failed to notify Maiorano that he was going to be absent from work for more than two scheduled workdays, and, thus, Dean voluntarily quit.  Dean responds that he was not subject to the call-in requirement under Paragraph 7.5 because he was not participating in the light-duty program and, rather, had elected to take FMLA and OFLA leave.

### A.    Was Dean Participating in Light-Duty Program?

If Dean were participating in the light-duty program, he had an obligation to report his absence from work to "the immediate supervisor of the department to which he [was] assigned," *id.*—that is, Maiorano, the supervisor of the health-and-safety room—prior to the beginning of his regularly scheduled shift.  It is undisputed that employees participating in the health-and-

safety-room program were to report to work from 11:00 a.m. to 7:30 p.m., Monday through

Friday. It is further undisputed that Dean did not call Maiorano to report that he was going to be

absent from Monday, March 21, 2011, through Friday, March 25, 2011. Thus, if Dean were

participating in Safeway's light-duty program, he violated Paragraph 7.5's call-in requirement and

thereby voluntarily quit.

In support of its argument that Dean was participating in the light-duty program, Safeway

first notes that Dean did not complete a form indicating that he was rejecting light-duty work.

Safeway appears to argue that Dean was required to fill out a portion of the Physician's Return-

to-Work Recommendations, which Dean's Kaiser physician filled out on March 23, 2011, and

which listed Dean's physical limitations and specified what work he was capable of performing.

*See* Ex. E, Smith Decl., #30-4, at 1-6. On the third page of the form is an "Employee Section"

where an employee may indicate whether he or she accepts the modified work recommended by

his or her physician. *Id.* at 3. Although Dean's Kaiser physician filled out the form, the

"Employee Section" is blank. *Id.* Additionally, Safeway argues that Dean did not follow

Safeway's procedure for requesting a leave of absence, thereby suggesting that he intended to

work in the health-and-safety room. Safeway further notes that Dean called Maiorano on March

18, 2011, to report that he would be absent from the health-and-safety room on that day.

Safeway suggests that this conduct is entirely inconsistent with Dean's current position that he

rejected Safeway's light-duty-work offer and had instead opted to take FMLA and OFLA leave.

Finally, Safeway contends that Dean accepted the benefits of the light-duty assignment.

Viewing the evidence in the light most favorable to plaintiff, I find that a reasonable jury

could find that Dean was not participating in the health-and-safety-room program. First, during

Page 12 - FINDINGS AND RECOMMENDATION

his March 16, 2011 telephone conversation with Rooney, Dean expressed concern about commuting to the health-and-safety room as he was taking Vicodin and could not drive.  Second, on March 17, 2011, Dean told Maiorano that he did not wish to participate in the light-duty program.  *See* Ex. B, Smith Decl., #30-3, at 2 (noting that Dean told Maiorano that he did "not want to participate in the [health-and-safety-room] program" and "that he [did] 'not need the money' and that he would 'rather just stay home and take care of it [himself]'").  Third, when Dean called Maiorano on March 18, 2011, to report his absence, he also indicated that he "would not be using the services of the [health-and-safety room]."  *Id.*  Finally, Dean states that he never received or reviewed the March 23, 2011 Physician's Return-to-Work Recommendations and, thus, he had no opportunity to indicate that he was declining any job offer for modified work.  *See* Dean Decl., #31, ¶ 5.  Despite Safeway's suggestion that Dean was accepting the benefits of working in the health-and-safety room, Safeway presents no evidence in support of this argument and does not allege that Dean was aware that he was receiving any benefits.  Thus, in light of the foregoing, a reasonable jury could conclude that Dean was not participating in Safeway's light-duty program.

### B. Was Dean Subject to Call-In Requirement?

If Dean elected to not participate in the health-and-safety-room program, the question remains as to whether he was subject to Paragraph 7.5's call-in requirement.  Dean contends that he was not subject to the requirement for two reasons.  First, Dean notes that, under Paragraph 7.5, an employee need not call in to report an absence if he or she is on an "approved leave of absence."  Ex. 1 to Ex. A, Brown Decl., #22, at 7.  Dean argues that he was on an "approved leave of absence" because, upon rejecting the light-duty assignment, he automatically

commenced a period of OFLA leave, pursuant to ORS § 659A.043(4).  Assuming for purposes of this argument that Dean automatically commenced OFLA leave—and I find below that he did not—his suggestion that a protected leave of absence equates to an "approved leave of absence" is unavailing.  Article 21 of the CBA discusses leaves of absence, stating: "Employees shall be required to request and the Employer may grant[] written leaves of absence in accordance with the rules and procedures provided herein. . . . Employees shall request leaves of absence in writing on an authorized Leave of Absence form."  Ex. 1 to Ex. A, Brown Decl., #22, at 22.  A memorandum from Safeway's human-resources department further elaborates, "Your first step in taking a leave is to complete a Leave of Absence Request Form and provide appropriate documentation.  Once this is completed you will receive a letter from Human Resources indicating whether or not you qualify for FMLA, OFLA, or WLFA."  Ex. G, Smith Decl., #30-4, at 1.  It is undisputed that Dean did not fill out a Leave of Absence Request Form and that he did not receive a letter from the human-resources department approving his request for a leave of absence.  Thus, even if Dean automatically commenced a period of OFLA leave pursuant to ORS § 659A.043(4), he was not on an "approved leave of absence," as that phrase is used in the CBA.

Second, although it is not entirely clear, Dean seems to suggest that Safeway could not lawfully subject him to the call-in requirement because he either automatically commenced a period of protected leave or the court should treat him as if he were on protected leave because Safeway improperly denied him his right to take such leave.  Even assuming that Dean was on protected leave, he cites no case law for the proposition that either the FMLA or the OFLA precludes an employer from continuing to require an employee to comply with a call-in policy.  Indeed, several courts of appeals have held to the contrary.  *See Bacon v. Hennepin Cnty. Med.*

Page 14 - FINDINGS AND RECOMMENDATION

*Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) (discussing an employer's call-in policy and noting that "[e]mployers who enforce such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA" (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004), *and Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002)); *see also Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013) ("Therefore, we hold that regardless of whether White provided sufficient FMLA notice to Dana during the September 30 meeting, Dana was nevertheless justified in terminating White's employment for his failure to follow the call-in requirements of Dana's attendance policy.").

Thus, in light of the foregoing, I find that Paragraph 7.5's requirements applied to Dean, as he was not on an approved leave of absence and, even assuming that he was on protected leave, Safeway could still require him to comply with the call-in policy.

### C.    Did Dean Satisfy Call-In Requirement?

As set forth in the preceding sections, a reasonable jury could conclude that Dean was not participating in Safeway's light-duty-work program and, thus, he had no obligation to report his absences to Maiorano.  However, even if he were not participating in the light-duty program, he was still required to "personally report his status . . . to his supervisor or other designated Employer representative prior to the beginning of his regularly scheduled shift," Ex. 1 to Ex. A, Brown Decl., #22, at 7, as he was not yet on an approved leave of absence.  Safeway contends that Dean failed to comply with this requirement because, as the undisputed evidence establishes, he did not call his supervisor to report his absences on March 21, 22, 23, 24, and 25, 2011. Furthermore, Safeway notes that, after Dean filed a grievance for wrongful termination, a Joint Conference Board upheld Dean's termination on the basis that he failed to comply with Paragraph

7.5.  Safeway contends that the Joint Conference Board's decision is final and binding, and the court must defer to the Board's finding.

On the record currently before the court, I am unable to reach the conclusion that Dean failed to comply with Paragraph 7.5.  Pursuant to that provision, he was required to call his supervisor "prior to the beginning of his regularly scheduled shift."  *Id.*  Safeway points to nothing in the record to support its contention that Dean was scheduled to work as a truck driver on March 21, 2011, through March 25, 2011.  The only evidence in the record regarding Dean's schedule as a truck driver is contained in the excerpts from Dean's deposition, attached as Exhibit A to the Declaration of Kerry Smith.  In response to the question, "After you went home sick when you talked to Erin that day, did you ever contact anyone and call in ever again?," Dean responded, "No.  It was actually their job to contact me, because I was extra board, if they wanted me to work."  Ex. A, Smith Decl., #30-2, at 16.  Dean went on to note, "I had a bid, and a bid requires them to call me if they want me to go to work."  *Id.*  Thus, while Safeway is correct that Dean was required to comply with Paragraph 7.5's call-in requirement, Safeway has failed to demonstrate that Dean violated that contract provision because it has not produced evidence showing that Dean failed to call his supervisor "prior to the beginning of his regularly scheduled shift."  Ex. 1 to Ex. A, Brown Decl., #22, at 7.

I am unpersuaded that the court must defer to the Joint Conference Board's determination that Dean violated Paragraph 7.5.  When an employee grieves his or her termination under Paragraph 7.5, the Joint Conference Board is limited to determining whether the employee could communicate with a supervisor regarding the employee's absence and whether the employee did so.  *Id.*  In this case, the Joint Conference Board issued a single-page decision, listing the issue as

Page 16 - FINDINGS AND RECOMMENDATION

"voluntary quit—failure to report" and the finding as "motion: grievance denied."  Ex. D,

Thomsen Decl., #23, at 1.  There is no indication that the Board considered, or even had the

authority to consider, whether Dean was participating in the light-duty program.  If the Board

assumed that Dean was participating in the light-duty program, then it never reached the question

of what Dean's reporting obligations were if he rejected Safeway's offer of light-duty

employment.

Because Safeway has not presented evidence that Dean would have worked at least two

days between March 21, 2011, and March 25, 2011, as part of his regular schedule, summary

judgment on Dean's claims is not appropriate on this ground and, accordingly, I shall turn to

consider Safeway's specific arguments with regard to each claim.

## II.    FMLA and OFLA Claims

Enacted to balance the needs of employees and families with those of employers, the

FMLA and the OFLA both provide a right for eligible employees of covered employers to

protected leaves of absence from work for specified medical reasons, including an employee's

own serious health condition.  29 U.S.C. §§ 2601(b), 2612(a)(1)(D); ORS § 659A.159(1)(c).

Eligible employees are entitled to up to twelve weeks of protected leave during any twelve-

month period.  29 U.S.C. § 2612; ORS § 659A.162.

Dean alleges two claims arising under the FMLA and the OFLA: (1) that Safeway denied

or interfered with his right to take protected leave; and (2) that Safeway discharged him in

retaliation for his attempt to exercise his right to take protected leave.  Because the OFLA is

construed "in a manner consistent with any similar provisions of the federal" FMLA, ORS

§ 659A.186(2), and, thus, Dean's claims under both statutes are subject to similar analysis, I will

Page 17 - FINDINGS AND RECOMMENDATION

discuss them together, with one exception below.

### A.    Interference

"Under [29 U.S.C.] § 2615(a)(1), it is 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise' the substantive rights guaranteed by [the] FMLA." *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (quoting 29 U.S.C. § 2615(a)(1)).  Likewise, ORS § 659A.183 provides that it is unlawful for an employer to deny an eligible employee family leave that the employee is entitled to take.  *See* ORS § 659A.183(1). To establish that Safeway denied or interfered with his right to take FMLA and OFLA leave, Dean must show: (1) he was eligible for the FMLA and the OFLA's protection; (2) Safeway was covered by the FMLA and the OFLA; (3) he was entitled to leave under the FMLA and the OFLA; (4) he provided sufficient notice of his intent to take leave; and (5) Safeway denied him FMLA and OFLA benefits to which he was entitled.  *Sanders*, 657 F.3d at 778 (quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)).  "In interference claims, the employer's intent is irrelevant to a determination of liability."  *Id.*

Dean's eligibility for FMLA and OFLA protection and Safeway's status as a covered employer under the FMLA and the OFLA are not disputed by the parties.  Likewise, the parties do not dispute that Dean was entitled to take protected leave.  Rather, Safeway moves for summary judgment on the bases that Dean did not give notice of his intent to take leave, he was not denied any benefits under the FMLA and the OFLA because he voluntarily quit, and, finally, even if Dean were able to prove that Safeway denied or interfered with his FMLA or OFLA rights, Dean cannot establish prejudice as he was not released to return to work within twelve weeks of the date of his discharge from employment.

Page 18 - FINDINGS AND RECOMMENDATION

1.      **Notice**

a.      **FMLA**

In giving notice of intent to take FMLA leave, "[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."  29 C.F.R. § 825.303(b).  It is well-established that an employee "need not expressly assert rights under the FMLA or even mention the FMLA."  *Id.*; *accord Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243-44 (9th Cir. 2014).  Rather, if an employee has provided sufficient information to alert an employer that the employee may need protected leave, the burden is on the employer to inquire as to whether the employee is seeking FMLA leave and to "obtain the necessary details of the leave to be taken."   29 C.F.R. § 825.302(c); *accord Escriba*, 743 F.3d at 1244; *see also Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1131 (9th Cir. 2001) (holding that an employer was on notice that an employee was seeking FMLA leave when she provided two doctor's notes to her employer regarding her absences from work).  An employer, however, can require an employee to follow the employer's internal policies or procedures for requesting leave.  *See* 29 C.F.R. § 825.303(c).  An employer may deny or delay FMLA-protected leave if an employee fails to comply with such internal policies or procedures. *Id.*

In this case, a reasonable jury could conclude that Dean gave sufficient notice of his intent to take FMLA leave.  On March 16, 2011, Dean provided Safeway with a form from Kaiser indicating that Dean could not operate a vehicle, he was under the continuing care of his Kaiser physician, and he would be receiving treatment for two to three weeks.  Ex. A, Dean's Decl., #31-1, at 2.  On that same date, Dean spoke with his supervisor, Rooney, via telephone.

During that conversation, Dean expressed concern about commuting to the health-and-safety room as he was taking Vicodin and could not drive.  The following day, Dean reported to the health-and-safety room and explicitly told Maiorano that he did not wish to participate in the light-duty program.  *See* Ex. B, Smith Decl., #30-3, at 2 (noting that Dean told Maiorano that he did "not want to participate in the [health-and-safety-room] program" and "that he [did] 'not need the money' and that he would 'rather just stay home and take care of it [himself]'").  Thus, a reasonable jury could conclude that, because Safeway was aware that Dean could not perform his duties as a truck driver and that he did not wish to participate in the light-duty program, the burden was on Safeway to inquire as to Dean's need to take a protected leave of absence.

Safeway's argument that Dean failed to follow the proper procedures for requesting leave is unpersuasive.  Safeway points to Paragraph 21.1 of the CBA, which provides that an employee must submit a written request for a leave of absence "on an authorized Leave of Absence form." Ex. 1 to Ex. A, Brown Decl., #22, at 22.  While the Department of Labor's regulations clearly state that an employer may deny or delay FMLA-protected leave if an employee fails to follow the employer's notice and procedural requirements, Safeway's policy is not altogether clear.  In support of his resistance to the motion for summary judgment, Dean submitted a memorandum addressed to "employee" from Safeway's Human Resources office.  *See* Ex. G, Smith Decl., #30-4, at 1.  In the memorandum, the Human Resources office advises employees that they must complete a Leave of Absence Request Form but the memorandum also states that "[v]erbal notice should be given within one or two days of learning the need for a leave, except in extraordinary circumstances."  *Id.*  Here, if a jury concluded that Dean's conversations with Rooney and Maiorano were sufficient to put Safeway on notice that he needed to take a protected

leave of absence, the jury could conclude that Dean gave the "[v]erbal notice" referenced in the memorandum. *Id.* Moreover, both the memorandum and Article 21 of the CBA reference a "Leave of Absence Request Form." In her declaration in support of the motion for summary judgment, Mary Beth Thomsen, a Safeway Human Resources Advisor, states that, "if [Dean] had requested a leave, he would have been provided with the appropriate FMLA or OFLA forms to complete and a determination would have been made as to whether or not he was eligible for leave." Thomsen Decl., #23, ¶ 14. Here, if a jury found that Dean rejected the light-duty assignment and sufficiently advised Safeway that he needed to take a leave of absence, the jury could conclude that it was Safeway's responsibility to provide Dean with the appropriate form.

In light of the foregoing, a reasonable jury could conclude that Dean gave sufficient notice of his intent to take FMLA leave.

### b.    OFLA

Under the OFLA, if an employee suffers an "unexpected serious health condition," the employee may commence a period of OFLA leave without prior notice. ORS § 659A.165(2). Rather, the employee need only provide the employer oral notice of his or her intent to take OFLA leave "within 24 hours of the commencement of the leave." *Id.* § 659A.165(3). The employee must provide written notice within three days after the employee returns to work. *Id.*

Unlike the FMLA, Oregon law has special rules that apply when an employee suffers a compensable on-the-job injury and seeks to take a leave of absence as a result. Once an employee has filed a workers' compensation claim, the employee may elect to use OFLA leave pending acceptance of the claim. Or. Admin. R. 839-009-0240(11)(a). If the claim is later denied, the employee continues on OFLA leave until he or she is released to return to work. *Id.*

Page 21 - FINDINGS AND RECOMMENDATION

If, on the other hand, the claim is accepted, the applicable regulations provide that the employee

is entitled to restoration of any OFLA leave taken prior to acceptance of the claim and the

"employer may not reduce the amount of OFLA leave available to [the] . . employee . . . by any

period the employee is unable to work because of [the] disabling compensable injury." *Id.* at

839-009-0240(11).  In other words, a leave of absence related to a compensable on-the-job injury

does not run concurrently with OFLA leave.  *Id.*  There is an exception to this rule, however,

when the employer makes "a bona fide offer . . . of light duty or modified employment that is

suitable" and the employee refuses the offer.  ORS § 659A.043(3)(a)(D), (4); Or. Admin. R. 839-

009-0240(12).  Under those circumstances, the employee automatically commences a period of

OFLA leave, without the need to provide further notice to the employer.  ORS §

659A.043(3)(a)(D), (4).

 In this case, Dean makes a series of confusing and inconsistent arguments.  First, he

contends that he rejected Safeway's offer of light-duty employment and, thus, he automatically

commenced a period of OFLA leave without the need for him to provide any further notice of his

intent to take such leave.  However, in connection with his claim that he was denied his right to

reinstatement under ORS § 659A.043, Dean contends that Safeway's offer of light-duty

employment was not a "bona fide" offer.  In support of that argument, Dean notes that, under the

workers' compensation regulations, an insurer may cease paying temporary total disability

compensation only if the employer or insurer confirms an offer of light-duty employment in

writing, detailing, among other things, the physical requirements of the job, and stating that the

employee's attending physician found the job to be within the employee's capabilities.  *See* Or.

Admin. R. 436-060-0030(5).  Dean contends that it is "logical and practical" to use the "test for

terminating temporary total disability benefits as the test for determining whether an employer

has made a bona fide light duty offer under ORS [§] 659A.043(3)(a)(D)." Dean's Surreply, #39,

at 9. Applying this test to the facts of this case, Dean argues that, while the March 23, 2011

Physician's Return-to-Work Recommendations contains all the details required under the

regulation, he never received a copy of that document. Thus, at least in connection with his

right-to-reinstatement claim, Dean contends that Safeway's offer of light-duty employment was

not a "bona fide" offer.

  In its response to Dean's surreply, Safeway does not object to Dean's use of Oregon

Administrative Rule 436-060-0030(5) to provide guidance on what a "bona fide" offer of light-

duty employment means in the context of ORS § 659A.043(3)(a)(D). Rather, Safeway merely

argues that Dean "cannot have it both ways." Safeway's Response to Surreply, #43, at 3. That is,

if Dean never received a bona fide offer of suitable light-duty work, he cannot claim to have

automatically commenced a period of OFLA leave. Indeed, Safeway suggests that, if there were

no bona fide offer of light-duty work, it could not have denied or interfered with Dean's OFLA

rights because, under the applicable regulations, OFLA leave cannot run concurrently with a

workers' compensation absence unless the employee refuses a bona fide offer of suitable light-

duty work.

  As an initial matter, I agree with Dean that it is logical to use Oregon Administrative Rule

436-060-0030(5) to provide guidance on what a "bona fide" offer of light-duty employment

means in the context of ORS § 659A.043(3)(a)(D). Under Rule 436-060-0030(5), Safeway could

not make a bona fide offer of light-duty employment until Dean's attending physician had

reviewed the job offer and agreed that Dean was capable of performing work in the health-and-

Page 23 - FINDINGS AND RECOMMENDATION

safety room.  This occurred during Dean's March 23, 2011 visit to Kaiser.  Once Safeway received the Physician's Return-to-Work Recommendations verifying that Dean's physician agreed that Dean was capable of performing the light-duty work, Safeway was required to provide Dean with a written offer of employment.  Dean contends that this never occurred and Safeway does not offer any evidence to the contrary.  Thus, viewing the evidence in the light most favorable to Dean, as of the date that his employment was terminated, Safeway had not made a bona fide offer of suitable light-duty employment and, therefore, Dean never automatically commenced a period of OFLA leave under ORS § 659A.043(4).

This finding, however, is of less significance than Safeway contends.  Safeway argues that, if there were no bona fide offer of light-duty employment, then any leave of absence cannot be counted as OFLA leave under Oregon Administrative Rule 839-009-0240 and, thus, there can be no OFLA violation.  I disagree.  Under Rule 839-009-0240, Dean could elect to take OFLA leave pending acceptance of his workers' compensation claim.  Neither of the parties identify any portion of the record establishing when Dean's workers' compensation claim was accepted.  Given that Dean did not file his claim until March 16, 2011, it is reasonable to assume that the claim had not yet been accepted by the time Dean's employment was terminated on March 25, 2011.

Thus, although Dean does not clearly articulate his claim, it would appear that he is merely alleging that Safeway denied or interfered with his right to take OFLA leave pending acceptance of his workers' compensation claim.  Under the OFLA, Dean only needed to provide oral notice of his intent to take OFLA leave "within 24 hours of the commencement of the leave." ORS § 659A.165(3).  Viewing the evidence in the light most favorable to Dean, I find that he

Page 24 - FINDINGS AND RECOMMENDATION

satisfied this requirement for the same reasons he satisfied his obligation to provide notice of his intent to take FMLA leave—that is, he notified Safeway that, due to his injury, he could not perform his duties as a truck driver and he told both Rooney and Maiorano that he did not wish to participate in the health-and-safety-room program. Despite this notice, Safeway did not provide Dean with the appropriate Leave of Absence Request Form. In light of this evidence, a reasonable jury could conclude that Dean has satisfied the notice element of his OFLA interference claim.

### 2.    Denial of Benefits

Next, Safeway argues that it did not deny Dean any benefits under the FMLA and the OFLA because Dean voluntarily quit when he failed to report his absences on March 21, 22, 23, 24, and 25, 2011. As set forth above, I find that there are genuine issues of material fact with regard to whether Dean complied with Paragraph 7.5 of the CBA. If a jury were to conclude that Dean had no duty to report his absences due to his status as an extra-board driver, a jury could find that Safeway denied him his right to take FMLA and OFLA leave when it failed to provide him with the appropriate Leave of Absence Request Form and then terminated his employment. Thus, summary judgment is not appropriate on this ground.

### 3.    Lack of Harm

Finally, Safeway argues that, even if Dean gave sufficient notice of his intent to take FMLA and OFLA leave and Safeway denied him his right to take such leave, Dean's interference claim still fails because he cannot establish that he was prejudiced by the violation. That is, Safeway argues that the FMLA and the OFLA only require an employer to reinstate an employee if the employee is on leave for less than twelve weeks. In this case, Dean was not medically

released to return to week within twelve weeks; rather, his Kaiser physician did not release him until June 30, 2011—that is, fourteen weeks after he was discharged from employment. Because Safeway would have been under no obligation to reinstate Dean at the time he was medically released to return to work, Safeway contends that Dean cannot establish that he was prejudiced by Safeway's alleged denial of his right to take protected leave.

I recognize that there is some support for Safeway's argument. *See, e.g.*, *Santrizos v. Evergreen Fed. Sav. & Loan Ass'n*, Civil No. 06-886-PA, 2007 WL 3544211, at *5-6 (D. Or. Nov. 14, 2007) (finding that the plaintiff could not show prejudice as a result of the FMLA violation because, even if his employer improperly denied him FMLA leave, the evidence in the record established that he would have been unable to return to work until after the expiration of the twelve-week period). *But see Sottile v. Church Healthcare, LLC*, Civil Action No. 10-62, 2011 WL 4528034, at *9 n.5 (D.N.J. Sept. 28, 2011) (concluding that the fact that the plaintiff would have been unable to return at the end of the twelve-week period "may go to the issue of damages, but it has no bearing on whether [p]laintiff's FMLA rights were violated"). Even if I were to find the analysis in *Santrizos* persuasive, there is a factual question precluding summary judgment on this ground. Namely, Dean suggests that, had Safeway given him the FMLA and OFLA leave to which he was entitled, he would have returned to his physician and sought a release to return to work prior to the expiration of the twelve-week period. *See* Second Declaration of Robin Dean, #40, ¶ 2. There is no evidence in the record suggesting that Dean was incapable of returning to work prior to June 30, 2011; rather, the evidence shows only that Dean had a doctor's appointment on June 30, 2011, and that his doctor found that Dean's condition as of that date was such that he could return to work. *See* Ex. F, Smith Decl., #30-4, at

1.  In light of the fact that there is no evidence suggesting that Dean could not have been medically released to return to work two weeks earlier, I find that Safeway is not entitled to summary judgment on this ground.

### B.      Retaliation

To establish a prima facie case that Safeway retaliated against him for attempting to invoke his FMLA and OFLA rights, Dean must prove by a preponderance of evidence that his invocation of rights protected by the FMLA and the OFLA ultimately constituted a negative factor in Safeway's decision to terminate him.[6]  *Bachelder*, 259 F.3d at 1125; *Peterson v. Tri-Cnty. Metro. Transp. Dist. of Or.*, No. CV-06-1828-ST, 2008 WL 723521, *9 (D. Or. Mar. 14, 2008); *see also* ORS § 659A.183.  "Requiring proof of a 'negative factor' is another way of stating that there must be some causal connection between the FMLA [and OFLA] right and the adverse employment decision."  *Peterson*, 2008 WL 723521, at *12.  An employee satisfies this burden of proof if he shows that he was subjected to disciplinary action for excessive absenteeism and his absences were taken for an FMLA- and OFLA-qualifying reason.  *See Bachelder*, 259 F.3d at 1125.

In its memorandum in support of the motion for summary judgment, Safeway contends that Dean was not terminated for poor attendance; rather, he voluntarily quit when he failed to

---

[6]  I note that, although Dean refers to this claim as a retaliation claim, it is characterized as an interference claim under Ninth Circuit law.  *See Nelson v. Unified Grocers, Inc.*, No. CV. 10-531-PK, 2011 WL 7029671, at *16-17 (D. Or. July 18, 2011) (discussing the distinction between interference and retaliation claims), *rejected on other grounds*, 2012 WL 113742 (D. Or. Jan. 12, 2012).  The distinction is significant insofar as the *McDonnell-Douglas* burden-shifting framework, while applicable to a retaliation claim, is inapplicable to an interference claim.  *See Sanders*, 657 F.3d at 778 (noting that the Ninth Circuit has declined to apply the *McDonnell-Douglas* burden-shifting framework to FMLA interference claims).  Furthermore, as noted above, an employer's intent is irrelevant in interference claims.  *Id.*

comply with Paragraph 7.5's call-in requirement.  As set forth above, I find that there are genuine issues of material fact with regard to Dean's reporting obligations under Paragraph 7.5.  If Dean were participating in the health-and-safety-room program, then he voluntarily quit by failing to report to Maiorano that he would not be in attendance on March 21, 22, 23, 24, and 25, 2011.

If, however, a jury concluded that Dean were not participating in the health-and-safety-room program and that he complied with Paragraph 7.5, then the jury could reasonably find that he has satisfied the causal-nexus requirement.  Viewing the evidence in the light most favorable to Dean and drawing all permissible inferences in his favor, Safeway had notice that Dean rejected the light-duty assignment and that he therefore needed to take a leave of absence for an FMLA- and OFLA-qualifying reason.  Despite this notice and contrary to Safeway's normal procedures, Safeway did not provide Dean with the requisite FMLA and OFLA leave of absence form to complete.  *See* Thomsen Decl., #23, ¶ 14 (noting that, had Dean requested any form of family leave, "he would have been provided with the appropriate FMLA or OFLA forms to complete").  Then, approximately a week after Dean attempted to exercise his right to take FMLA and OFLA leave, Safeway terminated Dean's employment, for the purported reason that he failed to comply with the call-in policy.  In light of these facts, a reasonable jury could find the requisite causal connection and, accordingly, summary judgment on Dean's FMLA and OFLA retaliation claims should be denied.

## III.    Wrongful Discharge

Next, Safeway moves for summary judgment on Dean's fifth claim for relief, under which Dean alleges that Safeway wrongfully terminated his employment because he asserted his OFLA

rights.[7]  "An employee may bring a claim for wrongful discharge 'when the discharge is for exercising a job-related right that reflects an important public policy.'"  *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (quoting *Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134, 140 (Or. Ct. App. 2004)).  The Ninth Circuit has concluded that an employee's exercise of his or her right to take leave under the OFLA reflects an important public policy.  *Id.* (citing *Yeager*, 195 Or. App. 134).  As set forth above, there are genuine issues of material fact with regard to whether Safeway terminated Dean's employment or he voluntarily quit.  If a jury found that Safeway terminated Dean's employment, the jury could further conclude that Dean was discharged for attempting to exercise his rights under the OFLA, as discussed in the preceding section.  Accordingly, summary judgment is not appropriate on Dean's wrongful-discharge claim.

## IV.    Disability Claims

Next, Safeway moves for summary judgment on Dean's disability claims.  In his complaint, Dean alleges three separate disability claims arising under the ADA and Oregon law. First, Dean alleges that Safeway failed to engage in an interactive process to determine whether a reasonable accommodation existed.  Second, Dean alleges that Safeway failed to provide him with a reasonable accommodation.  Finally, Dean alleges that he was unlawfully discharged because of his disability.  Because the Oregon legislature has mandated that ORS §§ 659A.103 to

---

[7]  I note that, although wrongful discharge is considered an "interstitial tort," Dean's wrongful-discharge claim is not preempted by the OFLA, as the OFLA does not "authorize an award of general or non-economic damages for emotional distress."  *Pacosa v. Kaiser Found. Health Plan of the Nw.*, No. 09-CV-1137-BR, 2011 WL 208205, at *14 (D. Or. Jan. 21, 2011) (quoting *Sanders v. City of Newport*, No. 07-CV-00776-TC, 2008 WL 2234085, at *12 (D. Or. May 30, 2008)) (internal quotation marks omitted)).

659A.144 "be construed to the extent possible in a manner that is consistent with any similar provisions of the federal" ADA, ORS § 659A.139, I shall construe Dean's federal and state-law disability claims together.

### A.    Failure to Engage in Interactive Process

Dean first alleges that Safeway is liable for failing to engage in an interactive process to determine whether a reasonable accommodation existed.  Safeway responds that failing to engage in an interactive process does not give rise to an independent cause of action.  Even if Dean could bring a separate claim on this basis, Safeway contends that it is the employee's duty to initiate the process and, in this case, Dean never requested any form of accommodation.

Under the ADA and Oregon law, once an employer becomes aware of an employee's disability and need for accommodation, the employer must engage in an "interactive process" designed to "identify and implement appropriate reasonable accommodations."  *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001); *see also* Or. Admin. R. 839-006-0206(4) (requiring the employer to engage in interactive process).  "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Humphrey*, 239 F.3d at 1137.  If an employer fails to engage in the interactive process, the employer may "face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Id.* at 1137-38.

Most courts hold that an employer's failure to engage in the interactive process is not a separate cause of action.  *See, e.g.*, *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) ("[T]he failure to engage in the interactive process by itself does not give rise to relief.");

Page 30 - FINDINGS AND RECOMMENDATION

*Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999) ("[T]here is no per se

liability under the ADA if an employer fails to engage in an interactive process."); *see also* 1

Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 922 (C. Geoffrey

Weirich ed., 4th ed. 2007) ("[M]ost courts hold that an employer's failure to engage in the

interactive process is not an independent legal violation . . . .").  The law in the Ninth Circuit,

however, is not clear in this regard.  In *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105 (9th Cir. 2000),

*vacated on other grounds by* 535 U.S. 391 (2002), the Ninth Circuit held that the duty to engage

in the interactive process is mandatory, not permissive, *see id.* at 1114, and that, when an

employer fails to engage in the interactive process, the employer "must face liability when a

reasonable accommodation would have been possible," *id.* at 1116.  The Ninth Circuit went on to

conclude that "an employer cannot prevail at the summary judgment stage if there is a genuine

dispute as to whether the employer engaged in good faith in the interactive process." *Id.*

Some courts in the District of Oregon have interpreted *Barnett* to mean that a plaintiff

may bring a separate cause of action for failure to engage in the interactive process.  *See, e.g.*,

*Austin v. Wal-Mart Stores, Inc.*, Civil No. 07-1306-HA, 2008 WL 4936480, at *10 (Nov. 14,

2008) (finding that failure to engage in an interactive process is a "stand-alone cause of action"

under both the ADA and Oregon law).  Other courts in the District of Oregon, however, have

concluded that there is no independent cause of action for failing to engage in the interactive

process.  *See Ambrose v. J.B. Hunt Transp., Inc.*, No. 3:12-cv-01740-HU, 2014 WL 585376, at

*21 n.10 (D. Or. Feb. 13, 2014) ("Plaintiff erroneously brought an independent cause of action

for failure to engage in [an] interactive process.").

I agree with those courts that have found that there is no separate cause of action for

failing to engage in the interactive process.  Rather, the duty to engage in an interactive process is part of the duty to accommodate.  Failure to engage in the interactive process, therefore, may prevent summary judgment on a failure-to-accommodate claim, but it does not give rise to a separate cause of action.  Thus, I shall consider Dean's allegation that Safeway failed to engage in an interactive process in connection with his failure-to-accommodate claim, discussed next, and Dean's stand-alone claim for failure to engage in the interactive process should be dismissed.

### B.    Failure to Accommodate

To establish a claim for failure to accommodate, a plaintiff must show that he was disabled within the meaning of the statute, he was qualified to perform the essential functions of his job with or without reasonable accommodation, and he suffered an adverse employment action because of his disability.  *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012); *see also Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000).  As noted above, "[o]nce an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey*, 239 F.3d at 1137.  An individual is not required to accept an accommodation; however, if the accommodation "is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified."  29 C.F.R. § 1630.9(d).

In this case, Dean alleges that Safeway failed to accommodate him in both of his positions—that is, his position in the health-and-safety room and his position as a truck driver.

Page 32 - FINDINGS AND RECOMMENDATION

### 1.    Health-and-Safety Room

Dean first takes the rather confusing position that Safeway failed to reasonably accommodate his disability while he was assigned to the health-and-safety room.  Dean argues that he was qualified to perform the essential functions of his job in the health-and-safety room with a reasonable accommodation—that is, Safeway could have provided him with transportation to and from work so that he could have taken his Vicodin and still reported for the light-duty program.

I find Dean's argument problematic.  First, in connection with his argument that he did not violate Paragraph 7.5, Dean contends that he rejected Safeway's offer of light-duty employment.  Indeed, in his conversation with Maiorano on March 17, 2011, Dean informed Maiorano that, not only did Dean not have a way of getting to the health-and-safety room, but he also did not want the job and did not need the money.  Dean cites to no authority suggesting that an employer violates the ADA or Oregon law when the individual rejects the employer's offer of employment for reasons unrelated to the employer's refusal to accommodate the individual's disability.  Thus, even assuming that transportation to work is a form of reasonable accommodation—and I am not convinced it is—Dean is unable to establish that he was subjected to an adverse employment action; rather, he rejected the offer of employment.

Second, if Dean is now arguing that he did not reject Safeway's offer of light-duty employment, then he voluntarily quit his position in the health-and-safety room when he failed to comply with Paragraph 7.5's call-in requirements, as set forth above.  Thus, even if Dean were participating in the light-duty program and assuming that providing transportation to work is a form of reasonable accommodation, Dean cannot establish a prima facie case under the ADA or

Oregon law because he did not suffer an adverse employment action.

In light of the foregoing, I find that Dean cannot prove that Safeway failed to reasonably accommodate his disability while he was assigned to the health-and-safety room.

### 2.    Truck Driver

Next, Dean argues that Safeway failed to reasonably accommodate his disability while he was employed as a truck driver.  Safeway contends that Dean cannot establish that he was qualified to perform the essential functions of his job as a truck driver nor can he establish any causal connection between his disability and his termination, as he voluntarily quit by failing to comply with Paragraph 7.5's call-in requirement.

### a.    Qualified Individual

First, Safeway maintains that, from March 16, 2011, through the date of his discharge, Dean was not qualified to perform the essential functions of his job because he could not drive a commercial truck, he never requested any form of accommodation, and Safeway is unaware of any accommodation that would have allowed him to drive a commercial truck.  Thus, Safeway argues that Dean cannot succeed on his failure-to-accommodate claim as he was not a qualified individual.  Dean responds that he could have performed the essential functions of his job with a reasonable accommodation.  Specifically, Dean suggests that a leave of absence is a form of reasonable accommodation and that, had Safeway permitted him time off, he would have been able to return to his job as a truck driver.  Moreover, Dean contends that he properly requested an accommodation and that such request did not have to be in writing or use any particular words, such as "reasonable accommodation."

I agree with Dean that a reasonable jury could find that, with a reasonable

Page 34 - FINDINGS AND RECOMMENDATION

accommodation, he was qualified to perform all of the essential duties related to his job as a commercial truck driver.  As Dean contends in his resistance to the motion for summary judgment, a leave of absence may be a reasonable accommodation where it is plausible that an employee could perform the essential functions of his or her job upon return from the leave of absence.  *See Humphrey*, 239 F.3d at 1135-36 (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999)).  "[T]he ADA does not require an employee to show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation." *Id.* at 1136.  In other words, an employer may be liable for failing to attempt to accommodate an employee by offering a leave of absence, even where it is not certain that the employee would be able to return to work at the end of the leave of absence. *Id.* (discussing *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869 (9th Cir. 1990)).

In this case, at the time that Safeway terminated Dean's employment, he was unable to perform the essential functions of his job as a truck driver.  However, his diagnosis—a strain or sprain of his right knee—was such that a leave of absence could plausibly accommodate his disability.  The March 16, 2011 form from Kaiser that Dean provided to Safeway indicated that Dean needed two to three weeks of treatment.  *See* Ex. A, Dean Decl., #31-1, at 2.  The March 23, 2011 form from Kaiser indicated that Dean would be subject to modified-duty restrictions for another two weeks.  Ex. E, Smith Decl., #30-4, at 1.  Thus, at the time that Safeway terminated Dean's employment, it had information suggesting that an additional two-week leave of absence could potentially accommodate Dean's disability.  Safeway does not argue that a two-week leave of absence was unreasonable.  Although Safeway contends that, by offering Dean a position in the health-and-safety room, it satisfied its duty to accommodate, Safeway did not engage in the

Page 35 - FINDINGS AND RECOMMENDATION

interactive process required under the ADA and Oregon law.  Despite the fact that Dean

expressed concern as to how he would commute to the health-and-safety room and stated that he

did not wish to participate in the light-duty program, Safeway did not engage in a "good-faith

exploration of [other] possible accommodations."  *Humphrey*, 239 F.3d at 1137.  Thus, based on

the foregoing, a reasonable jury could conclude that Dean was a qualified individual within the

meaning of the ADA and the applicable Oregon law.

### b.      Causal Connection

Under the third element of a failure-to-accommodate claim, a plaintiff must show that he

suffered an adverse employment action because of his disability.  *See Samper*, 675 F.3d at 1237.

In its memorandum in support of the motion for summary judgment, Safeway argues that Dean

cannot show that he suffered an adverse employment action because he voluntarily quit by failing

to comply with Paragraph 7.5's call-in requirement.  As set forth above, however, there are

genuine issues of material fact precluding summary judgment on this ground.  If Dean were

participating in the health-and-safety-room program, then Safeway is correct that he voluntarily

quit by failing to report to Maiorano that he would not be in attendance on March 21, 22, 23, 24,

and 25, 2011.

If, however, a jury concluded that Dean elected not to participate in the light-duty

program and that he had no duty to call in to report his absences because he was an extra-board

employee who had no regularly scheduled shifts, then Dean suffered an adverse employment

action when Safeway terminated his employment on March 25, 2011.  Moreover, a reasonable

jury could conclude that Safeway terminated Dean because of his disability.  In determining

whether an employer discharged an employee due to the employee's disability, "conduct resulting

from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey*, 239 F.3d at 1139-40 (citing *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1086 (10th Cir. 1997)).  "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Id.* at 1140 (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 143 (2d Cir. 1995)).  Here, Safeway's only proffered reason for discharging Dean was that he failed to comply with Paragraph 7.5 of the CBA.  If, however, Dean had no reporting obligation, a reasonable jury could conclude that Dean was, in fact, terminated on the basis that he was absent from work and, furthermore, that such absences constitute "conduct resulting from [his] disability." *Id.* at 1139.  Accordingly, I find that Safeway is not entitled to summary judgment on Dean's failure-to-accommodate claim.

C.    **Unlawful Discharge**

To sustain a claim of unlawful discharge under 42 U.S.C. § 12112(a) and ORS § 659A.112, Dean must show that he was disabled, that he was qualified to perform the essential functions of his job with or without reasonable accommodation, and that he was terminated because of his disability.  *See Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1229 (9th Cir. 2003); *Cooper v. Neiman Narcus Grp.*, 125 F.3d 786, 790 (9th Cir. 1997).  Unlike a simple failure-to-accommodate claim, an unlawful-discharge claim requires a showing that the employer's decision to terminate the employee was motivated, at least in part, by the employee's disability.  *See Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1048 (9th Cir. 2009).  Furthermore, unlike in a simple failure-to-accommodate claim, the *McDonnell-Douglas* burden-shifting framework applies when the plaintiff claims unlawful discharge.  *See Snead v. Metro.*

*Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

In this case, Safeway argues that Dean has not established a prima facie case of discrimination because he was not qualified to perform the essential functions of his job with or without accommodation and he was not terminated because of his disability. Safeway further argues that it had a legitimate, nondiscriminatory reason for terminating Dean's employment; specifically, his failure to comply with the call-in policy. I find Safeway's arguments unpersuasive. As set forth above in regard to Dean's failure-to-accommodate claim, a reasonable jury could conclude that Dean was qualified to perform the essential functions of his job as a trucker driver with a reasonable accommodation—that is, a leave of absence.

I further find that Dean has presented sufficient evidence to satisfy the third element of his prima facie case. Assuming that Dean had no reporting obligation as an extra-board employee, Dean did not voluntarily quit but, rather, Safeway terminated his employment. Although there is not strong evidence that Dean's disability was a motivating factor in his termination, there is sufficient evidence to create an inference of discrimination. Viewing the evidence in the light most favorable to Dean, Safeway became aware of Dean's disability on March 16, 2011, Dean requested an accommodation in the form of a leave of absence on March 17, 2011, and Safeway terminated his employment a week and a half later for the purported reason that he did not comply with the call-in policy—a policy that he arguably did not violate. Given the temporal proximity between Dean's request for an accommodation and his termination and Safeway's possible failure to provide a legitimate reason for Dean's termination, a reasonable jury could conclude that Safeway terminated Dean's employment due to his disability. Thus, although a close question, I find that summary judgment is not warranted on this claim.

V.      **Workers' Compensation Discrimination Claim**

Safeway next moves for summary judgment on Dean's claim under ORS § 659A.040.

Under ORS § 659A.040, it is unlawful "for an employer to discriminate against a worker . . .

because the worker has applied for benefits or invoked or utilized the procedures provided for in"

the workers' compensation system.  ORS § 659A.040(1).  To establish a prima facie case of a §

659A.040 violation, a plaintiff must show "(1) that the plaintiff invoked the workers'

compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or

conditions of employment; and (3) that the employer discriminated against the plaintiff in the

tenure or terms of employment because he or she invoked the workers' compensation system."

*Kirkwood v. W. Hyway Oil Co.*, 204 Or. App. 287, 293 (Or. Ct. App. 2006) (citation omitted).

Although Oregon courts have concluded that an employer's legitimate, nondiscriminatory reason

for discharging an employee is not a sufficient basis for granting summary judgment on a claim

under ORS § 659A.040, *see Williams v. Freightliner, LLC*, 196 Or. App. 83, 93 (Or. Ct. App.

2004), "this court must examine the evidence tendered on summary judgment beyond the *prima*

*facie* case in accordance with *McDonnell-Douglas*," *Grassmueck v. Johnson Controls Battery*

*Grp., Inc.*, Civil No. 06-526-ST, 2007 WL 1989579, at *7 (D. Or. July 2, 2007).

In this case, Dean alleges that a "substantial factor in the decision to deny [him] his

FMLA and OFLA rights and/or to terminate his employment was the fact that [he] had applied

for benefits or invoked or utilized Oregon's workers' compensation system."  Complaint, #1,

¶ 52.  In its memorandum in support of the motion for summary judgment, Safeway does not

contest that Dean invoked the workers' compensation system and, thus, has satisfied the first

element of his prima facie case.  Safeway, however, argues that Dean did not suffer any adverse

employment action because Dean voluntarily quit when he failed to comply with Paragraph 7.5's call-in requirement and, even if Dean could satisfy the second element of his claim, Safeway contends that there is no causal connection between Dean's invocation of the workers' compensation system and his termination.

Dean responds that "several events demonstrate that [he] was treated differently because he invoked Oregon's workers' compensation protections." Dean's Resistance to Motion for Summary Judgment, #29, at 28. First, Dean contends that, as a result of his invocation of the workers' compensation system, he was treated differently than other employees that seek FMLA and OFLA leave. In other words, Dean argues that he was denied FMLA and OFLA leave because he sought the leave in connection with a compensable on-the-job injury. Second, Dean contends that Safeway discriminated against him when it assigned him to the health-and-safety room, which is reserved for employees who suffer on-the-job injures and which entails monotonous duties designed to punish injured workers. Finally, Dean contends that, when he suffered an earlier carpal-tunnel injury for which he was denied workers' compensation, he was treated differently, including not being assigned to the health-and-safety room and not needing to follow "an onerous call-in policy." *Id.* at 29.

I find that Dean has established a prima facie case of discrimination. First, in his complaint, Dean identifies two adverse employment actions—he was denied his FMLA and OFLA rights and he was terminated. For the reasons set forth above, a reasonable jury could conclude that Dean was denied his FMLA and OFLA rights and, moreover, a reasonable jury could conclude that Safeway terminated Dean's employment without cause. Thus, Dean has satisfied the second element of his workers' compensation discrimination claim.

Second, although a close question, I find that Dean has presented sufficient evidence of a causal link between the adverse employment actions and his invocation of the workers' compensation system. "In order to establish the causal link, [a plaintiff] must show that [his or her] workers['] compensation claim was a 'substantial factor,' or 'a factor that made a difference,' in [the defendant's] decision to terminate [him or her]." *Lewis v. Wal-Mart Stores, Inc.*, Civil No. 08-410-ST, 2009 WL 3462056, at *9 (D. Or. Oct. 21, 2009) (quoting *Estes v. Lewis & Clark Coll.*, 152 Or. App. 372, 381 (Or. Ct. App. 1998)). "Proof needed to defeat summary judgment at the *prima facie* level 'is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Id.* (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)).

I am unpersuaded by Dean's argument that the existence of the health-and-safety room is, by itself, evidence of discrimination. While only employees that have suffered on-the-job injuries are assigned to the health-and-safety room, the light-duty program provides a benefit to injured workers as they are paid at their normal rate even though they are unable to perform their normal job. I am also not persuaded by Dean's argument that he was treated differently when he had carpal-tunnel surgery—an injury for which he filed a workers' compensation claim that was ultimately denied. It is doubtful that Safeway would have known that Dean's workers' compensation claim would be denied at the time he requested leave for his carpal-tunnel surgery and, thus, the fact that he was treated differently on that occasion is not evidence that Safeway discriminates against employees who file successful workers' compensation claims.

While I find most of Dean's arguments unavailing, I nevertheless find that, viewing the evidence in the light most favorable to Dean, he has presented sufficient evidence of a causal link. Significantly, Dean invoked the workers' compensation system on March 16, 2011—the

date that he filled out his workers' compensation claim form.  Safeway terminated his

employment a week and a half later.  *See Dunlap v. Liberty Natural Prods., Inc.*, No. 3:12-cv-

01635-SI, 2013 WL 6177855, at *9-10 (D. Or. Nov. 25, 2013) (finding that the plaintiff

presented prima facie evidence of a causal link given the temporal proximity between the

protected activity and the plaintiff's termination from employment).  Although Safeway

terminated Dean for the purported reason that he did not comply with the call-in policy, a

reasonable jury could conclude that Dean did not have any reporting obligation as an extra-board

employee, as discussed above.  Thus, given the temporal proximity between Dean's request for

an accommodation and his termination and Safeway's arguable failure to provide a legitimate

reason for Dean's termination, a reasonable jury could conclude that Safeway denied Dean

FMLA and OFLA leave and terminated his employment due to his invocation of the workers'

compensation system.  Accordingly, summary judgment on Dean's workers' compensation

discrimination claim should be denied.

## VI.    Failure to Reinstate

Finally, Safeway moves for summary judgment on Dean's failure-to-reinstate claim under

ORS § 659A.043.  Safeway argues that Dean never had a right to reinstatement because he was

terminated for failure to follow the call-in policy before he was medically released to return to

work.  Safeway further contends that Dean never made a demand for reinstatement.  In response,

Dean contends that Safeway improperly terminated Dean's employment and, thus, his

"reinstatement rights extended well beyond March 25, 2011."  Dean's Resistance to Motion for

Summary Judgment, #29, at 32.  Moreover, Dean argues that he was excused from demanding

reinstatement because, pursuant to the regulations promulgated by BOLI, an employee need not

Page 42 - FINDINGS AND RECOMMENDATION

make a demand for reinstatement where "the employer has made it known to the worker that

reinstatement will not be considered, even if a suitable position is vacant, and that an actual

demand would therefore be futile." Or. Admin. R. 839-006-0130(7). In it reply brief, Safeway

argues that Dean lost his reinstatement rights because: (1) he was discharged for cause; (2) he

declined a light-duty position; (3) he failed to make a demand for reinstatement within seven

days, as required by the applicable regulations; and (4) he abandoned his employment. Safeway

also notes that, at this point, Dean has lost any right to reinstatement because more than three

years has elapsed since his injury.

ORS § 659A.043 provides:

> A worker who has sustained a compensable injury shall be
> reinstated by the worker's employer to the worker's former position
> of employment upon demand for such reinstatement, if the position
> exists and is available and the worker is not disabled from
> performing the duties of such position.

ORS § 659A.043(1). An employee's right to reinstatement is terminated if, among other things:

(1) the employee "refuses a bona fide offer from the employer of light duty or modified

employment that is suitable prior to becoming medically stationary," *id.* § 659A.043(3)(a)(D);

(2) the employee fails to request reinstatement within seven days of receiving notice by certified

mail from the insurer or the employer that the employee's physician has authorized the employee

to return to work, *id.* § 659A.043(3)(a)(E); (3) more than three years have elapsed from the date

of injury, *id.* § 659A.043(3)(a)(F); (4) the employee "is discharged for bona fide reasons not

connected with the injury and for which others are or would be discharged," Or. Admin. R. 839-

006-0131(1)(g); or (5) the employee "clearly and unequivocally abandons employment with the

employer," *id.* 839-006-0131(1)(h). An employee does not lose his or her right to reinstatement

Page 43 - FINDINGS AND RECOMMENDATION

by failing to demand it if the employer "has made it known to the [employee] that reinstatement will not be considered, even if a suitable position is vacant, and that an actual demand would therefore be futile." *Id.* 839-006-0130(7).

Here, it is undisputed that Dean did not demand reinstatement.  Dean argues that Safeway made it known to him that reinstatement would not be considered when it sent him the March 25, 2011 letter terminating his employment.  I disagree.  Nothing in the March 25, 2011 letter suggests that Safeway would not consider reinstating Dean.  *See* Ex. C, Thomsen Decl., #23, at 1. The letter merely provides that Safeway is moving forward with Dean's termination because he voluntarily quit when he failed to call in to report his absences, as required under the CBA.  *See id.*  Given that the letter is silent as to whether Safeway would consider reinstating Dean to his former position, there was no basis from which Dean could conclude that a demand for reinstatement would be futile.  Because I find that Dean lost his right to reinstatement by failing to demand it as required under the statute, Safeway's motion should be granted insofar as it requests summary judgment on Dean's claim under ORS § 659A.043.

## CONCLUSION

Consistent with the foregoing, Safeway's motion for summary judgment (#20) should be granted in part and denied in part.  The motion should be denied insofar as it requests summary judgment on Dean's first, second, third, fourth, fifth, and sixth claims for relief.  Summary judgment on Dean's seventh claim for relief, alleging failure to reinstate an injured worker under ORS § 659A.043, should be granted in favor of Safeway.  Dean has voluntarily abandoned his eighth claim for relief.

/ / /

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 7th day of August, 2014.


_____/s/ Paul Papak_____
Honorable Paul Papak
United States Magistrate Judge