KERRY M. L. SMITH, OSB# 88103
SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503)669-2242
Facsimile: (503)669-2249
smithandfjelstad@frontier.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBIN DEAN,<br><br>             Plaintiff,<br><br>     v.<br><br>SAFEWAY, INC.,<br><br>             Defendant. | Civ. No. 3:12-CV-01875-PK<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT SAFEWAY'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS ON SAFEWAY'S SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED |

## I.    INTRODUCTION.

The court should deny Defendant Safeway's Objections to Magistrate Judge's Findings and Recommendations. Judge Papak correctly ruled that defendant is not entitled to summary judgment because there are genuine issues of material fact. Defendant's Objections, consistent with defendant's other submissions in this matter, continue to misstate the facts, present the facts in the light mot favorable to defendant and misrepresent the law. Specifically regarding

Defendant's Objections, defendant parcels out defendant's preferred call-in language of Section 7.5 of the CBA and refuses to acknowledge that Section 7.5, through very explicit terms, applies only to the employee's regularly scheduled shift. Because Section 7.5 applies on if Mr. Dean failed to call before the start of his regularly scheduled shift and Mr. Dean did not have a regularly scheduled shift (at a minimum there is a question of fact on this issue), the call-in requirement is not applicable. With this question of fact, defendant's alleged legitimate nondiscriminatory excuse is rebutted and, therefore, summary judgment is not appropriate. This court should not disturb Judge Papak's Findings and Recommendations regarding the denial of defendant's motion.

## II. STANDARD OF REVIEW.

In reviewing a magistrates findings or recommendations, the court may accept, reject or modify the findings or recommendations in whole or in part. 28 U.S.C. § 636(b)(1)(C). The court shall review *de novo* the specific portions of the findings or recommendations to which either party objects. *Id*.; Fed. R. Civ. P. 72(b)(3). In the absence of objection, no review is necessarily required. The Magistrate Act does not, however, preclude review by the district judge *sua sponte* under a *de novo* or other standard. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend, in the absence of objections, a review for "clear error on the face of the record." *Alter v. Colvin*, 2014 U.S. Dist. LEXIS 94345 (D. Or. 2014); *McCall v. Oregon*, 2013 U.S. Dist LEXIS 168517 (D. Or. 2013).

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

### III.     ARGUMENT

### A.     The Court Should Strike Defendant's Memorandum.

Throughout the briefing in this case defendant has demonstrated a significant disdain for citing facts in the light most favorable for Mr. Dean and for correctly citing applicable/controlling authority.  Mr. Dean has noted these significant and numerous errors in his prior filings.  Those prior filings are incorporated in this response in their entirety.

Defendant Safeway's Objections consists of 32 pages of written argument and actually carries over to 33 pages.  Defendant also incorporates, however, three additional pages of single spaced "Background Statement of Undisputed Facts" as Exhibit A.  The end result is that defendant has submitted a 36-37 page document.

"Without prior Court approval, memoranda (*including objections to a Findings and Recommendation of a Magistrate Judge* and response to such objections) may not exceed 11,000 words or in the alternative 35 pages. If the document exceeds the page limit, then the party must certify compliance with the word-count limit."  LR 7-2(b)1 (emphasis added).  Defendant did not seek prior court approval to file a document exceeding the limits of LR7-2(b)1 and did not provide the required word count limit certificate.  Defendant's use of "Exhibit A" to submit facts demonstrates that defendant was fully aware of the page/word count limit.  Rather than comply with the page/word count limit or seek court permission to exceed the limit, however, defendant simply crafted an effort to avoid the rules of this court.  As a sanction for defendant's obvious

SMITH &  FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

attempt to circumvent a valid court rule, the court should strike Defendant Safeway's Objections.[1]

**B.     Judge Papak Correctly Resolved Defendant's Motion for Summary Judgment.**

Defendant Safeway's Objections take an obvious shotgun approach and, consequently, are extremely confusing.  The lack of numbered headings makes the document extremely difficult to comprehend and systematically confuses where one argument ends and the next argument begins.  The rambling and repetitive nature of the document creates an unfortunate situation in which plaintiff's counsel cannot clearly identify the separate arguments and, consequently, cannot respond to the arguments in a point-by-point systematic manner.  Mr. Dean's counsel will, therefore, respond to defendant's apparent arguments in a comprehensive manner, though not necessarily in the order presented in Defendant Safeway's Objections.

**1.     Judge Papak did not reject the JCB's conclusions.**

Defendant's primary argument is, apparently, that Judge Papak rejected the JCB conclusion that Mr. Dean was able to communicate his absences or that he did not communicate the absences.  Defendant is incorrect.  Judge Papak did not disregard or overrule the JCB decision.  Rather, Judge Papak looked beyond the extremely narrow issue presented to the JCB and evaluated an issue which the JCB, pursuant to the terms of the CBA, could not evaluate or determine: Whether the call in requirement applied to Mr. Dean?  Following a complete review of this question, Judge Papak correctly concluded that there is, at a minimum, a genuine issue of material fact as to whether Mr. Dean was obligated to notify defendant of his absences.

---

[1]Mr. Dean does not respond directly to Exhibit A.  Rather, Mr. Dean incorporates the facts as stated in his prior filings and the Findings and Recommendation.

SMITH &  FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

### a    The JCB considered an extremely limited issue.

When Safeway terminates a Teamsters Local Union No. 162 employee under Section 7.5 Temporary Absence - Obligation to Notify Employer of the CBA, the employee may grieve the termination.  No grievance is allowed, however, "unless the **sole** issue raised is one of fact as to whether the employee was able to communicate or actually did so."  Dkt 22, p. 73 (emphasis added).  The CBA specifically prohibits the JCB from considering any other issues, such as (1) whether Safeway complied with the ADA; (2) whether Safeway complied with FMLA/OFLA requirements; (3) whether Safeway engaged in workers' compensation discrimination; (4) whether Safeway wrongfully discharged the employee because the employee asserted FMLA/OFLA rights; (5) whether Safeway failed to reinstate an injured worker; and (6) (perhaps most significantly) whether the employee actually had a "regularly scheduled shift" which required the employee to contact Safeway regarding a temporary absence from work.  In short, Safeway agreed to a CBA which significantly limited the JCB's authority in this limited situation and now faults Judge Papak for finding that the JCB limited the grievance as required under the CBA.  Absent conclusive evidence from Safeway to the contrary, Judge Papak correctly found that the JCB limited its inquiry, pursuant to the terms of the CBA, to whether Mr. Dean communicated his absence or was unable to do so.  Defendant has not presented any evidence or argument that this finding is incorrect or unsupported in the record.

### b.    Judge Papak correctly found there is a question of fact as to whether Mr. Dean was subject to Section 7.5 of the CBA.

Defendant strives to place the cart before the horse and argues vehemently that Mr. Dean is excused from calling in under Section 7.5 only if he is absent due to vacation, approved leave

of absence or hospitalization. This cart (the call in requirement) only moves, however, if the horse is present. The horse is the following clause because the employee need only call "prior to the beginning of his regularly scheduled shift." DKT 22, p. 73. If the employee does not have a "regularly scheduled shift" then the obligation to call, by the plain language of the CBA, is not triggered. This is only logical. Defendant's illogical interpretation would, essentially, require all employee's to call and report they are not coming to work even on dates they are not scheduled to work (including weekends).

Judge Papak found that, at a minimum, there is a question of fact as to whether Mr. Dean, in his position as a truck driver, had a regularly scheduled shift. Safeway has not identified any fact in the record supporting the argument that Mr. Dean was scheduled to drive a truck on March 21 through March 25, 2011 (Monday through Friday). Defendant has not identified any evidence in the record that Mr. Dean was scheduled to drive a truck on either March 19 or 20, 2011 (Saturday or Sunday). Indeed, defendant has not identified any evidence in the record indicating that Mr. Dean *ever* had a "regularly scheduled shift" to drive a truck. Rather, the only evidence in the record is that Mr. Dean did not have a "regularly scheduled shift" to drive a truck because he was an "extra board" driver and, if Safeway wanted him to work, then Safeway would call him to come to work. F&R p. 16. Mr. Dean "had a bid, and a bid requires [Safeway] to call [him] if [Safeway] want[ed] me to go to work." *Id*. Absent a "regularly schedule shift" to trigger Mr. Dean's call-in obligation under Section 7.5, Mr. Dean was not obligated to call Safeway at any point between March 21 and 25, 2011 to inform Safeway he was physically unable to work. In short, there was no horse to pull the cart and whether Mr. Dean was on vacation, approved leave or hospitalization simply does not enter the analysis.

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Similarly, Judge Papak concluded that there is a question of fact as to whether Mr. Dean's "regularly scheduled shift" was the Health & Safety Room between March 21 and 25, 2011. F&R p. 12-13. Mr. Dean, as noted by Judge Papak, specifically rejected the assignment to the Health & Safety Room. The evidence supports (and defendant does not contend otherwise) that (1) Mr. Dean expressed concern about commuting to the Health & Safety Room because he was taking Vicodin; (2) Mr. Dean specifically told Mr. Maiorano (the Health & Safety Room supervisor) that he was rejecting the assignment; (3) On March 18, 2011 Mr. Dean again told Mr. Mairorano he rejected the job assignment; and (4) Mr. Dean never received the March 23, 2011 completed Physician's Return to Work Recommendations and, therefore, never had the opportunity to reject the Health & Safety Room assignment in writing. In the face of this evidence, Safeway completely failed to offer any evidence that Mr. Dean accepted the assignment to the Health & Safety Room or that he received any benefits from an assignment to the Health & Safety Room. Judge Papak correctly concluded that there was a question of fact on this issue.

### 2. Mr. Dean was not obligated to accept the light duty assignment.

The evidence is that Mr. Dean rejected the assignment to the Health & Safety Room. Pltf's Resp. MSJ, pp. 7. Under the FMLA, Mr. Dean was authorized to reject the assignment to the Health & Safety Room. 29 C.F.R. §825.702(d)(2); Pltf's Resp to MSJ, pp. 13-14. Under OFLA, Mr. Dean was authorized to reject the light duty assignment. OAR 839-009-0245(5)(a); Pltf's Resp. to MSJ, p. 14-15. Upon rejecting the light duty assignment, Mr. Dean automatically commenced his family leave and was not required to provide Safeway with additional written or oral notice of the commencement of his family leave. ORS 659A.043(4)(a), (b).

PAGE 7 - PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO F & R

In addition to the proper rejection of the assignment to the Health & Safety Room, there is a genuine issue of fact as to whether defendant properly assigned Mr. Dean to work in the Health & Safety Room. ORS 659A.043(3)(a)(D) does not identify the elements of a bona fide light duty offer to an injured worker for purposes of OFLA. Under workers' compensation law, however, a bona fide offer of light duty employment must comply with OAR 436-060-003095. Pltf's Supp. Resp. MSJ, pp. 8-10. Mr. Dean's medical provider did not approve the light duty job offer until March 23, 2011. Smith I Dec. Ex. E. It is undisputed that Mr. Dean did not see the approved light duty job offer prior to his termination. Dean I Dec. ¶5. Rather, Mr. Dean received only blank copies of the forms when he reported to the Health & Safety Room. Dean 2 Dec. ¶4. A jury could conclude that the alleged light duty job offer was invalid.

### C.  A Jury Could Conclude That Defendant Did Not Have A Legitimate Nondiscriminatory Excuse.

Defendant's only argued legitimate nondiscriminatory excuse for terminating Mr. Dean is defendant's reliance on Section 7.5 of the CBA. As noted above, Judge Papak correctly found that there is a question of fact as to whether Section 7.5 applied to Mr. Dean. A jury could conclude that the Section does not apply and, therefore, defendant did not have a legitimate nondiscriminatory excuse for Mr. Dean's termination. At a minimum, a jury could conclude that, in light of the plain language referencing "prior to the beginning of his regularly scheduled shift," defendant could not have, in good faith, believed Mr. Dean violated Section 7.5. Where there is a factual question as to whether the employer acted in good faith, summary judgment is not appropriate. *Arnold v. Pfizer, Inc.*, 970 F.Supp.2d 1106, 1138 (D. Or. 2013).

A jury could also find that the following facts, among others (as more fully addressed in

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

plaintiff's previous submissions) undermine defendant's alleged nondiscriminatory excuse:

1. Timing of the discharge;

2. Defendant's failure to comply with OAR 436-060-003095 with respect to the Health & Safety Room job offer;

3. Providing Mr. Dean with blank forms when he spoke with Mr. Maiorano (Pltf's Sur-Resp pp. 10-11; Dean II Dec. ¶4,5);

4. Informing Mr. Dean that his doctor approved his assignment to the Health & Safety Room when the doctor, as of the date Mr. Dean reported to the room, had not had an opportunity to review the forms;

5. Failing to provide Mr. Dean with the completed Physicians Return-to-Work Recommendations (Pltf's Sur-Resp pp. 10-11);

6. Failing to provide Mr. Dean with his FMLA/OFLA rights when he lawfully rejected the Health & Safety Room assignment;

7. Lying to Mr. Dean regarding the consequences of lawfully rejecting the Health & Safety Room assignment (Plt's Resp MSJ p. 7 (Mr. Maiorano told Mr. Dean that if he rejected the Health & Safety Room he was subject to written reprimand, suspension or termination));

8. Defendant's failure to discuss accommodation for Mr. Dean in getting to and from work in the Health & Safety Room;

9. Defendant's failure to engage in any type of accommodation discussion with Mr. Dean; and

10. The nature of the tasks assigned in the Health & Safety Room.

Jude Papak correctly ruled that, assuming defendant asserted a legitimate non-discriminatory excuse, there is sufficient evidence for a jury to conclude that Mr. Dean rebutted the alleged excuse.

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

**D.** **The Failure to Accommodate Claim Is Not Subject to the *McDonnell Douglas* Analysis.**

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework does not apply to a failure to accommodate claim because no proof of intent is necessary when the employer fails to accommodate an employee. *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004); *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, p. 27 "Burdenns of Proof" (EEOC 2002). Rather, to defeat a motion for summary judgment based on a failure to accommodate claim, the plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e. ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 435 U.S. 391, 401-02 (2002). If the employer fails to accommodate an employee when an accommodation is possible, then the employer has violated the ADA. *Humphrey v. Memorial Hospitals Ass.*, 239 F.3d 1128, 1133 (9th Cir. 2001). Once the plaintiff demonstrates that accommodation is "reasonable," the burden shifts to the employer to provide case-specific evidence proving that reasonable accommodation would cause an undue hardship. *Id.* An employer cannot prevail at the summary judgment stage on a failure to accommodate claim if the employer failed to engage n the interactive process. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) *vacated on other grounds*, 535 U.S. 391 (2002). The duty to accommodate is a continuing duty that is not exhausted by one effort. *Humphrey*, 239 F.3d at 1138.

Proof of the following elements establishes a *prima facie* case of failure to accommodate: (1) a disability[2]; (2) that plaintiff was able to perform the essential functions of the job with or

---

[2]Defendant did not challenge this element in the Motion for Summary Judgment and should not be allowed to address this element now. *See, e.g.*, Fed. R. Civ. P. 56(a) (party seeking

**SMITH & FJELSTAD**
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

without accommodation; and (3) the plaintiff suffered an adverse employment action because of the disability. *Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012). Mr. Dean has demonstrated that time off would have accommodated his inability to drive a truck. Mr. Dean has demonstrated that transportation would have accommodated his need to reach the Health & Safety Room.[3] Mr. Dean suffered an adverse employment action because of his disability. Mr. Dean has, therefore, stated a failure to accommodate *prima facie* case and defendant's alleged excuse (Section 7.5) is not relevant.

> **E.** **Mr. Dean's FMLA/OFLA Interference Claims Are Not Subject to the *McDonnell Douglas* Analysis.**

Mr. Dean alleges that defendant interfered with his FMLA/OFLA rights. Complaint, ¶38, 42. The Ninth Circuit does not apply the *McDonnell Douglas* analysis to family leave interference claims. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011); *Arnold v. Pfizer, Inc.*, 970 F.Supp.2d at 1143 ("The *McDonnell-Douglas*, burden-shifting analysis is inapplicable to FMLA claims."). To prevail on an interference claim, the employee only need

---

summary judgment must identify each claim or defense, or part of each claim or defense, on which summary judgment is sought.). In any event, the best defendant can conjure at this date is that it is "**questionable** whether his knee injury even qualified as a disability." Def. Obj. p. 26. This is an admission that whether Mr. Dean was disabled is question of fact. Additionally, the record demonstrates that Mr. Dean suffered from a "current tear knee, medial cartilage or meniscus." Smith I Dec. Ex. F. This is significantly more than the knee strain/sprain which defendant falsely represents as the medical condition at issue.

[3]Defendant argues the *completed* Physician's Return-to-Work Recommendations indicate that Mr. Dean could work if he did not take the Vicodin eight hours before the start of work or at work and this obviated the need to assist Mr. Dean with getting to work. This is another example of defendant's failure to state all facts favorable to Mr. Dean. The record clearly demonstrates that Mr. Dean *never* saw the completed form. Once defendant received the completed form, defendant should have informed Mr. Dean and initiated the interactive process based on the most recent medical information. The ADA bars this "hide-the-ball" game defendant desires.

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

show that his use or need for FMLA/OFLA was a negative factor in the adverse employment action. *Bachelder v. America West Airlines*, 259 F.3d 1112, 1124-25 (9th Cir. 2001).

The employer is responsible for determining "when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Liu v. Amway Corp.*, 37 F.3d 1125, 1134 (9th Cir. 2003). The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.302(c). Once an employee informs the employer of the need for leave, it is the employer's responsibility to properly identify leave. *Liu*, 347 F.3d at 1134. The employer's good faith or lack of knowledge that it is violating FMLA/OFLA is not relevant. *Bachelder*, 259 F.3d at 1130. An employer's failure to assess an employee's entitlement to FMLA/OFLA leave is the denial of a substantive right under FMLA/OFLA and constitutes a violation of the FMLA/OFLA. *Liu*, 347 F.3d at 1135; *Bachelder*, 259 F.3d at 1130-31. An employer is obligated to inform an employee of his leave rights and obligations. *See, e.g.,* 29 C.F.R. § 825.300; *Bachelder*, 259 F.3d at 1127-28.

In this case, the facts demonstrate that Mr. Dean's need for FMLA/OFLA leave and his effort to utilize such leave resulted in his termination. The facts also demonstrate that Mr. Dean properly notified defendant of his need for leave and of his intent to exercise his right to protected leave. Defendant's alleged good faith reliance on Section 7.5 in denying Mr. Dean protected leave is not relevant. Judge Papak correctly concluded that summary judgment is not appropriate on Mr. Dean's FMLA/OFLA claims.

Defendant also appears to argue that Mr. Dean would have exhausted his leave prior to his release to return to work on June 20, 2011. Judge Papak properly found that, even if

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

defendant's argument has merit, there is a question of fact as to whether Mr. Dean could have been released to work earlier if defendant had properly placed him on leave and informed him of his rights and obligations while on leave. In addition to Judge Papak's findings, defendant has failed to demonstrate the applicable leave year and, therefore, has failed to produce any evidence that Mr. Dean utilized his full 12 weeks of protected leave during the applicable leave year. Defendant is not entitled to summary judgment on the family leave claims.

### F. Mr. Dean Was A Qualified Individual With A Disability.[4]

### 1. A leave of absence would have accommodated Mr. Dean's disability.

Defendant contends "there is no indication a leave of absence would have accommodated [Mr. Dean's] injury in any way." Obj P. 24. Defendant attempts to base this argument on "Dean Ex E, p. 1". Mr. Dean signed two declarations with respect to Defendant's Motion for Summary Judgment. The first Declaration of Robin Dean (dated March 31, 2014) references an Exhibit A. The Second Declaration of Robin Dean (dated May 5, 2014) does not reference any exhibits. Thus, there is no "Dean Ex E, p.1" in the record. Neither this court nor plaintiff's counsel are required to search the record to identify the source of defendant's alleged factual authority. *See, e.g., Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774-75 (9th Cir. 2002) (the failure to cite supporting factual authority warrants exclusion of the factual statements); *Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999) ("Judges [and opposing counsel] need not paw over files without assistance from the [moving party].").

To the extent defendant is referencing a Physician's Return-to-Work Recommendations, those Recommendations are dated March 23, 2011. Mr. Dean *did not* see those

---

[4]Defendant's Objections, pp. 23-24.

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

recommendations prior to his termination. Dean I, ¶5. To the extent defendant had the Recommendations prior to March 25, 2011, the Recommendations put defendant on notice of the need to engage in the interactive process. Defendant's failure to share this information with Mr. Dean prior to his termination actually supports Mr. Dean's argument that defendant failed to engage in the interactive process and failed to accommodate his disability.

Mr. Dean agrees that an accommodation only need be reasonable and need not necessarily comport with the employee's preference. Obj pp. 24-25. As of March 23, 2011, however, defendant had not made a *bona fide* offer of light duty employment because, prior to that date, Mr. Dean's provider *had not* approved an assignment to the Health & Safety Room. Following March 23, 2011, defendant *did not* inform Mr. Dean that his provider had approved an assignment to the Health & Safety Room. The ADA is not intended to allow defendant to withhold critical information from Mr. Dean and then pull a "got you" with that information following termination.

Defendant contends it is speculative that Mr. Dean could have returned to work following a leave of absence. Obj 24-25. The ADA, however, "allows an indeterminate amount of leave, barring undue hardship, as a reasonable accommodation." 29 C.F.R. § 825.702(b). A leave of absence is a reasonable accommodation. *Humphrey v. Memorial Hospitals Ass.*, 239 F.3d 1128, 1136 (9th Cir. 2001) ("We have held that where a leave of absence would reasonably accommodate an employee's disability and permit him, upon return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA."); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 878 (9th Cir. 1990) ("As long as . . . there were 'plausible reasons to believe that the handicap [could have been] accommodated' by the a (sic) leave of absence, [the

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

employer] is responsible for its failure to offer such leave."). The evidence is that Mr. Dean was released to drive truck no later than June 30, 2011. Smith Dec. Ex. F. A leave of absence clearly would have allowed Mr. Dean to return to his truck driving position.

To avoid providing Mr. Dean with a leave of absence, defendant must plead and prove that providing an accommodation created an undue hardship. *McAlindin v. City of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999) *quoting* 42 U.S.C. § 12112(b)(5)(A); *Bates v. UPS, Inc.*, 511 F.3d 974 (9th Cir. 2007). While defendant alleged 19 Affirmative Defenses (Dckt. 8) defendant did not allege an undue hardship defense. Additionally, defendant has not argued or demonstrated that a leave of absence would have created an undue hardship. Thus a leave of absence for Mr. Dean was an appropriate accommodation.

### 2. There was a causal connection between Mr. Dean's disability and his termination.

Defendant also argues there was no causal connection between Mr. Dean's disability and his termination.[5] Defendant is incorrect. Mr. Dean's disability prevented him from driving a truck for a limited period of time. If defendant had simply granted Mr. Dean a leave of absence, then Mr. Dean could have returned to driving a truck for Safeway. Defendant's refusal to grant Mr. Dean a leave of absence led directly to Mr. Dean's termination. Thus, there is a causal connection between defendant's action and Mr. Dean's termination.[6]

---

[5]Def. Obj. p. 21.

[6]Indeed, if defendant had simply granted Mr. Dean the simple accommodation of a leave of absence, a leave to which he was entitled, then Mr. Dean would have been on an approved leave and exempt from calling in under Section 7.5 even if he had a regularly scheduled shift. Defendant's repeated failure to comply with obvious statutory obligations imposed on the employer and rights granted to Mr. Dean caused Mr. Dean's termination.

PAGE 15 - PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO F & R

**3.      Mr. Dean could operate a truck before and after his termination.**

There is no evidence or argument that, prior to his doctor removing him from work, Mr.

Dean was unable to perform the essential functions of his truck driving position with Safeway.

Similarly, there is no evidence or argument that following his release to return to work Mr. Dean

was unable to perform the essential functions of the truck driving.  He could not perform the

essential functions of that position for a limited period of time.  This is significant evidence that

Mr. Dean could perform the essential functions of his truck driving position with defendant with

the accommodation of a leave of absence.  Summary judgment was not appropriate.

**4.      Safeway failed to engage in the interactive process for Mr. Dean to reach the
        Health & Safety Room.[7]**

Mr. Dean concedes that the record reflects that on one day, March 17, 2011, he planned

his Vicodin around a visit to the Health & Safety Room.  The record also reflects, however, that

during his time in the Health & Safety Room Mr. Dean informed defendant he could not

regularly participate in the Health & Safety Room unless he had assistance with getting to work.

Pltf. Resp. p. 22.  A jury could conclude that Mr. Dean's forbearance of his medication one day

to engage in the interactive process was not an agreement to skip his pain medication daily so he

could drive to work.  Again, a jury could conclude that, if defendant had discharged the

interactive process obligation, then Mr. Dean and Safeway could have resolved this issue.

Defendant, however, ignored the interactive process and failed to accommodate Mr. Dean.

Defendant's reliance on the March 25, 2011 Physician's Return-to-Work

Recommendations is intentionally misleading.  Admittedly, this document informs those who

---

[7]Def. Obj. p. 28-30.

PAGE 16 - PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO F & R

read the completed document that Mr. Dean's medications will not interfere with Mr. Dean's alertness or ability to respond in an emergency *provided* Mr. Dean does not take the medication while at work or eight hours prior to work. Smith I Dec. Ex. E, p. 1. The evidence is, however, that while Safeway possessed this information, this information *was not* shared with Mr. Dean prior to his termination. Dean I Dec. ¶5. Perhaps, if defendant had simply shared this information with Mr. Dean rather than keeping this information confidential, Mr. Dean and Safeway could have agreed on a reasonable accommodation that would have allowed Mr. Dean to work in the Health & Safety Room.[8] Defendant's failure to share this information is additional evidence that Safeway caused a breakdown in communication and failed to engage in the required interactive process. Judge Papak properly found that there is a question of fact on whether Safeway failed to accommodate Mr. Dean with getting to and from the Health & Safety Room.

### G.    Mr. Dean Was Not Required to Give Notice of His Need for Leave.

Defendant oddly contends that Mr. Dean was required to provide 30 days' notice of his need for FMLA/OFLA leave because his need for leave was not an emergency. Defendant argues, again oddly, that since Mr. Dean was injured on February 17, 2011 and his doctor did not remove him from work until March 16, 2011, Mr. Dean was required to provide extended notice of his need for leave. In short, defendant argues that Mr. Dean was required to continue working as a truck driver after March 16, 2011 for a full 30 days because his injury was not the result of an "emergency." Defendant provides absolutely no legal support for this argument. The failure

---

[8] They also would have necessarily discussed Mr. Dean's authorized rejection of his assignment to the Health & Safety Room during the period of his family leave.

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

to offer any legal support for this argument is because there is no legal support for the argument and the argument is contrary to FMLA/OFLA.[9]

Defendant cannot provide legal support for the argument because FMLA does not speak in terms of "emergency" (a term defendant uses three times in six lines on page 31 to allegedly discuss the notice requirements of FMLA). Rather, FMLA speaks in terms of "foreseeable" leave. FMLA requires 30 days' notice of the need for leave or as much notice as possible if 30 days' notice is not possible. *See, e.g.,* 29 U.S.C. § 2612(e)(2)(A), (B). For unforeseeable leave, the employee must provide notice as soon as practicable. 29 C.F.R. § 825.303(a). In this case, Mr. Dean could not foresee his need for FMLA/OFLA leave until until his doctor removed him from work on March 16, 2011. Pltf's Resp. p. 6. Mr. Dean provided his restriction to Safeway that same day. *Id*. Mr. Dean gave timely notice of his need for unforeseeable leave.[10]

## H. Judge Papak Properly Denied Summary Judgment on Mr. Dean's Wrongful Discharge Claim.

Judge Papak concluded that defendant was not entitled to summary judgment on Mr. Dean's wrongful discharge claim because "there are genuine issues of material fact with regard to whether Safeway terminated Dean's employment or he voluntarily quit." F&R p. 29. For the reasons argued above regarding Mr. Dean's FMLA/OFLA claims, this conclusion is correct.

---

[9]As noted in documents plaintiff has previously filed, defendant's inaccurate legal and factual statements surface consistently throughout defendant's written submissions.

[10]Defendant's argument on this issue is simply bizarre. Under defendant's argument, any employee who temporarily put off seeking treatment for a serious medical condition could not commence leave for a 30 day period after succumbing to the medical condition and seeking treatment. In this case, therefore, Mr. Dean would have been required to continue driving a truck for 30 days even though his doctor medically prohibited him from driving a truck. There simply is no logic or legal support for defendant's frivolous argument.

PAGE 18 - PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO F & R

Judge Papak did not error in denying Defendant's Motion for Summary Judgment regarding the wrongful discharge claim.

## I. Judge Papak Properly Denied Defendant's Motion Regarding Workers' Compensation Discrimination.

Judge Papak concluded that the timing of Mr. Dean's termination in relation to the date that he filed his workers' compensation claim and a genuine question of fact as to whether defendant had an otherwise legitimate excuse to terminate Mr. Dean was sufficient to deny defendant's motion regarding Mr. Dean's workers' compensation discrimination claim.

The timing of Mr. Dean's termination, immediately following his application for workers' compensation benefits, is compelling evidence of discrimination. Additionally, Mr. Dean had reported the injury approximately one month earlier but had not filed a workers' compensation claim. The fact that there were no negative consequences for a month after Mr. Dean reported his injury but there were negative consequences within a week of formally filing the workers' compensation claim is strong evidence of workers' compensation discrimination.

Additionally, a jury could easily conclude that defendant did not have any basis for terminating Mr. Dean and did not have a good faith basis for believing he violated Section 7.5 because Mr. Dean did not have a regularly scheduled shift. If a jury concludes that defendant did not have a good faith basis for the termination, that defendant fabricated the reason for termination, the lack of good faith and the existence of a fabrication support Mr. Dean's workers' compensation discrimination claim.

Mr. Dean also incorporates his arguments that the denial of FMLA/OFLA leave, the dissimilar treatment regarding his prior carpal tunnel injury, the reason for the assignment to the

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249

Health & Safety Room and the nature of the "work" in the Health & Safety Room support his workers' compensation discrimination claim.  Pltf's Resp. pp. 27-31.

> **J.  On Plain Error Review the Court Should Deny Summary Judgment on the Failure to Reinstate Claim.**

Mr. Dean opposed summary judgment on his ORS 659A.043 with two arguments.  First, he argued that he was excused from demanding reinstatement because Safeway terminated his employment.  Pltf's Resp. p. 32-33.  Judge Papak rejected this argument.  F&R 44.  Mr. Dean did not file an objection to this decision.

Second, however, Mr. Dean argued that he was not required to demand reinstatement because defendant never triggered his obligation to demand reinstatement.  Pltf's Resp. p. 33.  Judge Papak *did not* address this argument.  This court should review the failure to address this argument under the clear error standard.  Mr. Dean was not required to demand reinstatement until the workers' compensation insurer or the self-insured employer notified him, *via certified mail*, that he was released to his prior position of employment.  ORS 659A.043(3)(E).  In this case, defendant did not offer any evidence that the insurer or the self-insured employer sent the required certified mailing to Mr. Dean.  Consequently, because defendant never triggered Mr. Dean's obligation to demand reinstatement, Mr. Dean was not required to demand reinstatement.  A jury could conclude, therefore, that Safeway's failure to reinstate Mr. Dean violated ORS 659A.043.

> **IV.  CONCLUSION**

There are genuine issues of material fact as to whether Section 7.5 applied to Mr. Dean.  With the applicability of Section 7.5 in doubt and a question of fact as to whether defendant

PAGE 20 - PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO F & R

could, in good faith, rely on that section to justify Mr. Dean's termination when the plain language of the provision contradicts defendant's argument, summary judgment is not appropriate. There are numerous facts demonstrating that defendant simply ignored defendant's obligations under FMLA/OFLA, the ADA and state workers' compensation law to remove Mr. Dean from his employment. Those facts demonstrate that, even if defendant can present a legitimate nondiscriminatory excuse for terminating Mr. Dean, a jury could reject that excuse and find for Mr. Dean. Additionally, defendant's alleged excuse is not even relevant to Mr. Dean's FMLA/OFLA claims or his failure to accommodate claims. This court should uphold Judge Papak's Findings and Recommendations with respect to denying defendant's various motions.

The court should examine Judge Papak's grant of summary judgment on Mr. Dean's failure to reinstate claim under a plain error standard and reject Judge Papak's conclusion because defendant failed to offer any evidence that defendant triggered Mr. Dean's obligation to demand reinstatement to his truck driving position.

Dated: October 9, 2014.

SMITH & FJELSTAD
By: /s/ Kerry M. L. Smith
Kerry M. L. Smith
OSB NO. 881033
Of Attorneys for Plaintiff

SMITH & FJELSTAD
722 N. Main Ave.
Gresham, Oregon 97030
Telephone: (503) 669-2242 \ Facsimile: (503) 669-2249